16853

ATLANTIC COAST LINE R. CO. v. PUBLIC SERVICE
COMMISSION *ET AL.*

(81 S. E. (2d) 357)

*Messrs. McKay & McKay,* of Columbia, *for Appellant,*

*Messrs. T. C. Callison, Attorney General,* and *Irvine F. Belser, Assistant Attorney General,* of Columbia, and *T. Allen Legare,* of Charleston, *for Respondents,*

March 31, 1954.

STUKES, Justice.

The appellant Railroad Company brought this action in equity to enjoin the enforcement of, and reverse, an order of the Public Service Commission which requires a round-the-clock watchman at the near-right angle intersection of a

paved State highway and its double, main line tracks in a Charleston suburb, which is known as Liberty Hill Crossing. The Court refused to interfere with the order of the Commission and dismissed appellant's complaint, whence this appeal. It is upon exceptions which allege that the order is arbitrary and oppressive and its effect would be to place an unwarranted expense upon appellant and thereby impose an unnecessary burden on interstate commerce, in violation of the commerce and due process clauses of the Federal and State Constitutions.

The evidence before the Commission established that the railroad tracks are used by many trains, passenger and freight, the latter averaging in length from eighty to one hundred forty-four-foot cars, and they frequently pass each other on the crossing, going in opposite directions. The crossing is an open one to the extent that trains approaching from both directions are visible for long distances to a motorist on the highway when he reaches a point on either side at least seventy feet from the nearest rail of the first track; and it is protected by modern reflector-type "crossbuck" signs on both sides of the tracks, to the staffs of which are affixed State Highway Department stop signs, and there is a warning sign on the highway several hundred feet distant from the crossing on each side of it.

The location is in a thickly populated area and a traffic count in 1951, over a three-day mid-week period, showed an average of 2783 motor vehicles per twenty-four hours and 263 vehicles during the busiest single hour of the day. The local superintendent of schools testified that fourteen school busses used the crossing twice each school day, which involved the daily transportation of an average of 1182 pupils.

From 1944 to 1951 there were eleven collisions, the most of them at night, between motor vehicles and trains at the crossing which caused seven fatalities and injuries to numerous other persons. The worst was the last of that period and in it three members of one family were killed and three others

injured. It is said to have resulted when the automobile was stopped for the passage of a train in one direction and then driven in front of another which was headed in the other direction. This is a tragic illustration of the futility of the stop signs, with which that driver complied, only to afterward meet death.

The Commission proceeded under the provisions of the Code of 1942. Section 8227 empowered and required the Commission, quoting, "to regulate and control by special order in each case the manner in which any street, street railway, or other railroad track * * * may cross any railroad track." Section 8228 authorized the Commission, generally, to provide, quoting, "such rules and regulations with reference to the crossings of railroad tracks by public highways as in its judgment will be conducive to the public safety * * *." Section 8380 specifically provided authority to the Commission, quoting, "Upon the application of the county supervisors, if they deem it necessary, to require any railroad corporation to have a stationary flagman at any crossing, the importance of which may demand it." The corresponding sections of the current Code of 1952 are Sections 58-991, 58-801 and 58-1001, respectively.

The rule of judicial review of a commission order relating to railroad companies is that the commission's findings of fact are *prima facie* correct and should not be set aside unless clearly against the weight of the evidence. Such an order must be reasonable but it is presumptively so, and will not be reversed upon review unless it is shown to be clearly unjust and unreasonable. *Southern R. Co. v. Public Service Commission*, 195 S. C. 247, 10 S. E. (2d) 769. Tested by these rules, the judgment under appeal must be affirmed.

A railroad may be required, under the police power of the State, to maintain gatemen, watchmen, or flagmen at highway crossings, where such measure to safeguard against danger is reasonable, which we find it to

be under the facts of this case. 44 Am. Jur. 609, Railroads, Sec. 398. 74 C. J. S. Railroads, Sec. 433 a., p. 1018. The requirement by ordinance of a flagman at a crossing, despite the presence of an elevated automatic electric warning signal, was upheld in *Nashville, C. & St. L. Ry. v. White,* 278 U. S. 456, 49 S. Ct. 189, 73 L. Ed. 452, opinion by Mr. Justice Holmes.

Appellant mistakenly argues that because a motor vehicle driver may be found to have been guilty of contributory negligence on the occasion and under the particular circumstances of a given collision with a train at the crossing, further safeguards may not be reasonably required of the railroad; and *Taylor v. Atlantic Coast Line R. Co.,* 217 S. C. 435, 60 S. E. (2d) 889, is cited. In point to the contrary is *Municipal Officers of Newport v. Maine Cent. R. Co.,* 123 Me. 383, 123 A. 172, 173, from the opinion in which we quote:

"The Public Utilities Commission, however, in determining what public safety requires in the way of protection at grade crossings, while it may not make the protection of the foolhardy alone the basis of its action, may properly take into consideration the frailties of human nature, as well as the volume of travel, and the existing physical conditions surrounding the crossing, and may consider also the consequences which may flow from the negligent conduct of the imprudent, a certain degree of which, experience teaches, is quite as likely to enter into every 'crossing accident' as the physical or inanimate conditions surrounding the crossing. Again, public safety at railroad crossings involves more than that of the drivers of motor cars. It includes as well, not only passengers therein and other travelers upon the highway, including those of tender years and immature judgment, but also those traveling by rail as well."

It may be added that the Commission provided in the alternative for the installation of an automatic flashing signal at the crossing, as follows:

"We will enter an order requiring respondent to station a flagman at the Liberty Hill crossing on a 24 hour daily basis effective October 1, 1951. Should some way be found to install automatic flashing signals on the crossing, then respondent may, upon such installation, petition us for vacation of our order and we will enter herein such further order, or orders, as appear necessary and proper."

The judgment is affirmed and the *supersedeas* heretofore issued is dissolved.

BAKER, C. J., TAYLOR and OXNER, JJ., and MARTIN, Acting Associate Justice, concur.