BOARD OF COUNTY COMMISSIONERS OF
PRINCE GEORGE'S COUNTY *v.* LEVITT
& SONS, INC.

[No. 344, September Term, 1963.]

152

*Decided June 2, 1964.*

The cause was argued before HENDERSON, PRESCOTT, HORNEY and SYBERT, JJ., and KEATING, J., Associate Judge of the Second Judicial Circuit, specially assigned.

*Robert B. Mathias,* with whom were *Lionell M. Lockhart, Joseph S. Casula* and *Harry L. Durity* on the brief, for appellant.

*James Magruder Rea,* with whom was *Alfred C. Scuderi* on the brief, for appellee.

PRESCOTT, J., delivered the opinion of the Court.

The appellee, Levitt & Sons, Inc., applied to the Board of

County Commissioners of Prince George's County, sitting as the District Council, for the reclassification of a small tract of land containing a little less than an acre, at the intersection of Belair Drive and Crain Highway from a R-R Zone (one-family detached residential) to a C-1 Zone (local commercial). In accordance with law (Section 78: [a] of Ch. 780, Act of 1959), the application was sent to the Maryland-National Capital Park & Planning Commission (Commission) for approval, disapproval, or suggestions. The Commission recommended that the application be denied. The Planning Board of Prince George's County recommended approval of the Commission's action. A hearing was held before the District Council on February 15, 1963, and, after said hearing, the Council denied the application. The appellee herein appealed to the Circuit Court, and the court reversed the action of the District Council. This appeal followed.

The appellant has posed several questions, but in the view we take of the case, it may be determined by answering the following one, which was the only one argued before, and decided by, the trial judge: Were the "administrative findings, inferences, conclusions, or decisions" of the District Council supported by "competent, material and substantial evidence in view of the entire record as submitted," and if so, were they "against the weight of competent, material and substantial evidence in view of the entire record, as submitted by the agency?"

The appellant seeks to attack the constitutionality of Section 79 (i) (5) and (6); however, this question was not raised or argued in the court below, hence, for the purposes of this appeal, we must consider them as valid enactments of law. Maryland Rule 885; *Gonzales v. Ghinger,* 218 Md. 132. Cf. *Kirby v. State,* 222 Md. 421.

The appellee is a very large land developer. In 1959, it came to Maryland and purchased a tract of land containing over 2000 acres. Since that time, it has purchased a large additional acreage: some 800 acres. It has built many dwellings thereon, and also quite a number of business establishments on land rezoned for such purposes. The business establishments, for the main part, are centered in one location containing some 35 acres.

The subject property contains about 9/10 of an acre, and is

located at the intersection of Belair Drive and Crain Highway. Belair Drive is a thoroughfare leading to and from the subdivision built by appellee. Crain Highway at this point is a four-lane dual highway, separated by a median strip, and is a main arterial highway from Baltimore City south. Apparently, Belair Drive does not continue on the other side of the Crain Highway from the subject property.

Application was made by the appellee for a C-1 reclassification with the idea of following this up by a request for a special exception to permit a gasoline filling station, as there are no provisions for special exceptions for this purpose under the existing classification. Of course if the C-1 reclassification be granted, appellee will be at liberty to utilize the property for any of the various businesses permitted in that classification.

The trial court summarized all of the testimony on behalf of the applicant, as follows:

"(1) Carl E. Dusinberre, a real estate representative for Socony-Mobil Oil Co., testified that he had ascertained the results of a recent traffic count made by the State Roads Commission and that he had kept the property under observation for six months. He made a study of traffic flow at the intersection and the location was desirable for a service station.

"(2) Patrick Shields, an employee of applicant corporation, in the Department of Community Relations, made studies of the location, including traffic flow and visibility from various places, which indicated the desirability of granting the application.

"(3) A. P. Devito, Director of Technical Planning for applicant, an architect, who had previously testified in cases involving land use, considered the zoning of the particular property. He stated that being located at the intersection of two heavily travelled highways, one of which is an arterial interstate route and the other a major means of egress to a community of 2000 present homes with a future potential of 8000, there is a need for commercial zoning and R-R is not a proper classification for the property.

"(4) Robert A. Hagan, Director of Community Relations for applicant, stated that the location of the property was 2.35 miles from their existing shopping center and more than that to the Archer property, another area of commercial zoning, and estimated that ⅔ of the homes in the development were nearer to this property.

\* \* \*

"A letter from the Secretary of the Belair Citizens Association stated his organization urged favorable consideration of the application without stating any reason."

Supplementing the above summarization by the trial court slightly, we state that appellee's witnesses developed the fact that the intersection is heavily travelled by persons in automobiles, and the residents of Belair who intended to go to Washington by the John Hanson Highway would have to go just south of its intersection with route 301 if they desired to purchase gasoline in that locality.

We now examine the evidence on the other side of the picture. The comprehensive zoning map which includes the subject property was adopted in 1960. Although appellee offered considerable testimony relative to a proposed filling station (which would require a special exception), the District Council ruled that no request for a special exception was before it; hence it was considering the application in accordance with what it was—an application for rezoning to C-1.

The Technical Staff Report was before the Council, and it discusses the application and the recommendations contained in the report rather thoroughly. It discloses that the subject property is surrounded by a residentially zoned area, and it is a part of the fast developing single-family subdivision of Belair. Some two miles to the south on the Crain Highway is land zoned for commercial uses, including a large Holiday Motel and gasoline filling stations; and land to the north about the same distance (at the intersection of route 450 with the Crain Highway) is zoned commercial, where two filling stations are located. The record does not disclose commercially zoned properties between

these two areas. At a distance of 2.35 miles to the northwest on route 450 is the 35 acre parcel of Belair zoned C-1, which contains a shopping center and a filling station (at the argument, it was stated without denial that there were some nine filling stations located near the subject property within a radius of about 2½ miles). Outside the development of Belair, the lands have remained predominantly agricultural in nature. The report stated that the "changes which have occurred since November, 1961, [the date of a previous staff report] have in no way altered the general character of the area. The zoning changes which have occurred [none was shown to have taken place between the areas on the Crain Highway zoned commercial, mentioned above] are of insufficient magnitude and in several instances have served only to remove an existing commercial use from a non-conforming status."

The report recognized that whenever extensive residential development occurs in an area that is predominantly agriculturally oriented, it creates a need for related commercial facilities to serve the people. Supposedly these facilities are to serve the people of the neighborhood, but, when placed on arterial highways, the location encourages use by persons outside the community. Planning experience in other locations in the nation indicates that when an area is developed under one ownership, as in the case of Belair, the developer can exercise architectural and site planning controls beyond those required by the Zoning Regulations, but, when the Staff is considering an application for reclassification, it cannot assume what controls will be exercised; therefore it must consider such requests by observing similar facilities in similar locations, and the effect which such facilities have had upon the surrounding areas. Generally, this has been unfavorable when the facilities are scattered throughout the area in piece-meal fashion, and usually has been detrimental to the community and its future developmental potential. (The Staff report also considered and reported on three other requests by the same owner for reclassifications to C-1 of small parcels located at different spots in the subdivision.) Consequently, the Staff recommended that the application be denied "in favor of encouraging the developer to consider grouping these [the locally needed] facilities in a service area complex," pointing out that such an area could include

such facilities as gasoline service stations, professional offices and other local service-oriented establishments, with small harm to the adjacent residential areas. The Staff suggested that if the present commercial center in Belair had been properly located, it was logical to assume that the proper location for such a service-oriented complex would be close to that center.

The testimony further disclosed that all of the applicant's 35 acre tract in Belair zoned C-1 had not been developed. The Chief Engineer of the Maryland-National Capital Park and Planning Commission testified at the hearing, supporting the Staff report. Seven nearby residents spoke in opposition to the granting of the application, giving such reasons as opprobrious spot zoning, violation of a buffer between two existing commercial areas, increased traffic congestion, etc., and petitions containing many names, which opposed the reclassification, were filed. Maps were introduced as exhibits, showing the area surrounding the subject property and the zoning classifications thereof.

The District Council decided that there had been an insufficient showing of "a need for the change in the area," and that there had been no mistake "of anything else insofar as the map is concerned," and denied the application "in conformance with the recommendation of the Park and Planning Commission."

The trial judge concluded that this action of the Council "was not supported by competent, material and substantial evidence," and reversed its action and approved C-1 zoning for the property.[1]

---

1. Section (i), in pertinent part, reads:
   "Courts' action—The court may affirm the decision of the District Council or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the *administrative* [italics added] findings, inferences, conclusions, or decisions are * * * (5) unsupported by competent, material and substantial evidence in view of the entire record as submitted; or (6) against the weight of competent, material and substantial evidence in view of the entire record, as submitted by the agency; * * *."
   The section is almost, if not, identical with certain provisions of Section 255 of Article 41, the Administrative Procedure Act.

In order to determine whether the court's action was correct, we must examine the appropriate test to be applied to the record before the trial judge, and decide whether his conclusion was warranted by the record, with that test applied. Prior to the Acts of 1957, Ch. 712, there were no statutory appeals from the zoning decisions of the Council to the courts. That Act provided for review thereof by the courts in almost, if not, identical terms as Section (i). It will be noted that Section (i) permits a *reversal* or *modification* of the Council's decision by the courts only if substantial rights have been prejudiced by the Council's *administrative* findings, inferences, etc., "in view of the entire record."

We have repeatedly held that the action of zoning or reclassification of zoning is a function that is legislative in nature. However, this does not prevent the Council from making *administrative* findings of fact, drawing administrative inferences, and arriving at administrative conclusions and decisions, when hearing an application for rezoning, and the statute clearly anticipates such action. Cf. *County Council v. Egerton*, 217 Md. 234. 1 Am. Jur. 2d, *Administrative Law*, § 92. After making its administrative findings of fact, etc., the Council is then in a position to exercise its legislative function of granting or denying the petition for reclassification.

In the case of *Prince George's County v. Donohoe*, 220 Md. 362, the validity of the provisions of Ch. 712 of the Acts of 1957 dealing with review by the courts of the Council's action (the precursor of Section [i]) was under attack. Chief Judge Brune, for the Court, stated: "There is nothing novel in the provisions of the seventh paragraph of Sec. 1113 (d), *supra*, that the court may affirm the decision of the District Council or remand the case for further proceedings, or that it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because of the administrative findings, inferences, conclusions, or decisions are: [then follow all of the provisions now contained in Section (i), except number (6)]." It was unnecessary in that case to determine the constitutionality of number (6), but we stated that if subsection (6) were unconstitutional, this fact would not invalidate the Section in its entirety.

It will be noted that both subsections, (5) and (6), contain the phrase "in view of the entire record as submitted." There have been numerous decisions of this Court relating to the "substantiality of the evidence" rule in reviewing zoning cases. Many such cases are collected in 23 M.L.E., *Zoning & Planning*, § 43. Most of them (if not all) do not deal specifically with the question as to whether the substantiality of the evidence should be determined by a consideration of the record as a whole, or should the evidence offered to substantiate the administrative finding be viewed "in isolation," to use Mister Justice Frankfurter's words in *Universal Camera Corp. v. Nat'l Labor Rel. Bd.*, 340 U. S. 474. In other words, whether the "substantial" evidence should be considered by itself to determine its substantiality, or should the evidence that detracts therefrom be also considered.

There are modern and very thorough treatments of the subject of judicial review of the actions of administrative bodies in 1 and 2 Am. Jur. 2d, *Administrative Law*, and 73 C.J.S., *Public Administrative Bodies & Procedure*, as well as in the splendid work of Professor Davis on *Administrative Law*. In the case of *Board v. Oak Hill Farms*, 232 Md. 274, Judge Hammond, for the Court, correlated, in a very comprehensive opinion, what is stated by the above authorities and others relating to reviews by Courts based on "substantial evidence on the record considered as a whole" and the "weight of all the evidence." (Again, in that case we did not reach the question of the constitutionality of subsection [6]. The constitutionality of subsection [5] was not contested.) He pointed out that Justice Frankfurter had traced the evolution of the substantial evidence rule in federal administrative law in *Universal Camera Corp., supra*, and, after considering and reviewing other authorities stated:

> "Whether the test of substantial evidence on the entire record or the test of against the weight of all the evidence is followed, the courts have exercised restraint so as not to substitute their judgments for that of the agency and not to choose between equally permissible inferences or make independent determina-

tions of fact, because to do so would be exercising a nonjudicial role. Rather, they have attempted to decide whether a reasoning mind could reasonably have reached the result the agency reached upon a fair consideration of the fact picture painted by the entire record.

"In the cases dealing with consideration of the weight of the evidence, the matter seems to have come down to whether, all that was before the agency considered, its action was clearly erroneous or, to use the phrase which has become standard in Maryland zoning cases, not fairly debatable. 73 C.J.S. *Public Administrative Bodies and Procedure*. Sec. 225."

He then, again, noted that the test of the substantiality of evidence on the whole record and that of the weight of the evidence is thin and difficult to delineate. (An examination of the authorities clearly shows that the line of demarcation is subtle and tenuous in nature.)

Applying the above principles to the facts, we think that a reasoning mind could reasonably have reached the result arrived at by the Council upon a fair consideration of the entire record, and we do not think that its action was clearly erroneous or not fairly debatable. Cf. *Sewell v. Sewell*, 218 Md. 63; *Oliver v. Oliver*, 217 Md. 222. We start off with the zoning map of 1960, with its presumption of correctness. *Reese v. Mandel*, 224 Md. 121. The record would not support a finding of error in the original zoning. The Council seems to have recognized that the large increase of single-family dwellings would justify some additional local commercial zoning, but did not consider the small subject property to be of the appropriate size or in the right location for a piecemeal reclassification. It apparently is the policy of the zoning authorities in Prince George's County (at least in this area of the County) to group the commercial activities in commercial areas, rather than to have so called "strip zoning" for those purposes. The wisdom of the zoning method followed is for the Legislature or local legislative body acting under authority from the Legislature, and not for the courts to determine. *Anne Arundel Cty. Com'rs v. Ward*, 186

Md. 330. And county zoning changes consistent with a long-range plan are preferable to piecemeal rezoning. *Muhly v. County Council,* 218 Md. 543. We hold that the action of the Council was supported by competent, material and substantial evidence in view of the entire record, and its action was, at least, fairly debatable and, therefore, not clearly erroneous.

The *Oak Hill Farms* case, heavily relied upon by the trial judge, is easily distinguished on its facts. In that case, there had "been many changes to commercial zoning, and actual commercial uses, in the neighborhood since the last comprehensive zoning plan was adopted in 1949. There [were] some one hundred thirty-five acres of commercially zoned land in the area surrounding the land [there] involved. These marked changes in the neighborhood [were] expressly conceded by the appellants."

> *Order reversed, and the resolution*
> *of the District Council reinstated;*
> *appellee to pay the costs.*