STATE INSURANCE COMMISSIONER *v.* NATIONAL BUREAU OF CASUALTY UNDERWRITERS, ᴇᴛ ᴀʟ.

[No. 600, September Term, 1966.]

\* \* \*

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY *v.* STATE INSURANCE COMMISSIONER OF MARYLAND, ᴇᴛ ᴀʟ.

[No. 639, September Term, 1966.]

*Decided December 13, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, BARNES and McWILLIAMS, JJ.

*Lewis A. Noonberg, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for Insurance Commissioner.

*James J. Doyle, Jr.,* with whom were *Sherbow, Shea & Doyle, Russell H. Matthias* and *Meyers & Matthias* on the brief, for State Farm Mutual.

Submitted on the brief by *Norman P. Ramsey, Thomas Waxter, Jr.,* and *John N. Reid* for National Bureau of Casualty Underwriters.

*George W. Shadoan, City Attorney* and *Roger W. Titus, Assistant City Attorney,* for The Mayor and Council of Rockville, Md., part of appellees.

HAMMOND, C. J., delivered the majority opinion of the Court. BARNES, J., dissents. Dissenting opinion at page 310, *infra.*

By Ch. 553 of the Laws of 1963 the legislature repealed Art. 48A of the Code, titled "Insurance," and enacted in lieu thereof a new Art. 48A, titled "Insurance Code," to compre-

hensively govern and control insurers and the insurance business in Maryland. Rates were to be regulated so that they were to be neither excessive, inadequate, nor unfairly discriminatory by requiring insurers to file with the Insurance Commissioner schedules of proposed rates for his approval or disapproval.

In September 1965 State Farm Mutual Insurance Company filed for approval a proposed schedule of substantial increases on various classes of motor vehicle risks. In November the National Bureau of Casualty Underwriters filed a similar schedule. The statute (§ 243 (b) (1)) directs that rates be made upon consideration of past and prospective loss experience, catastrophe hazards, if any, underwriting profits and contingencies and other relevant factors within and without Maryland. The Commissioner denied both requests and thereafter, upon demand, held a hearing in each case as the statute, § 245 (1), requires. The Bureau's request was heard first in December 1965, and State Farm's in May 1966. Each applicant for increased rates presented evidence in support of its request, and various protestants, including the City of Rockville and the Chairman of the Unsatisfied Claim and Judgment Fund, appeared in opposition. The Commissioner had the benefit of the views of his staff members and a consulting actuary. Section 245 directs the Commissioner, after the hearing, to "affirm, reverse or modify his previous action, specifying his reason therefor * * *" and requires that his "order shall contain specific findings of fact * * * in relation to the matter before him, such findings to be supported by a preponderance of the evidence on consideration of the record as a whole." Any party may file with him proposed findings of fact which he may accept or reject.

The Commissioner's rejection of the request of both the Bureau and State Farm was based on two main determinations: one, that earned premiums should be compared with paid losses rather than the customary incurred losses, and two, that underwriting income must include investment income derived from invested unearned premium reserves.

Both the Bureau and State Farm appealed to the Baltimore City court under § 245 (2), which directs the Commissioner

when an appeal is noted to prepare an official record containing his findings and order and a transcript of the testimony and exhibits, and requires the court to affirm, reverse or modify the order or decision in whole or in part if it finds that the order or decision is "not in accordance with law," or is "not supported by the preponderance of the evidence on consideration of the record as a whole."

Chief Judge Foster heard the Bureau's case first and dismissed the appeal, holding that rate regulation under Art. 48A is legislative action, that under Article 8 of the Declaration of Rights of the Constitution of Maryland legislative and judicial functions must be and remain separate, that the judiciary cannot be called upon to act as legislators, and that if the court followed the statute by deciding whether the Commissioner's order was supported by a preponderance of the evidence it would unconstitutionally be finding facts and substituting its judgment on the facts found for that of the Commissioner. He held further that there was no other standard of review the court could apply even if he held the first sentence of § 245 (2), providing that "all orders or decisions of the Commissioner shall be subject to review by appeal to the Baltimore City court," could stand independent and unimpaired after the "preponderance of the evidence" provision was stricken unconstitutional. His reasons for this conclusion were that (1) no part of § 245 (2) is severable inasmuch as § 245 (3) provides that "the provisions of this section shall govern hearings, orders and appeals in matters arising under the provisions of this subtitle [subtitle 16—Rates and Rating Organizations]. Sections 35, 36, 37, 38, 39 and 40 [of Art. 48A] shall not apply to rating and rating organizations" (these sections grant de novo appeals on orders under Art. 48A not relating to rates), and (2) the Administrative Procedure Act specifically excludes the Insurance Department from its operation and effect (the exclusion was part of the 1963 revisions of the insurance laws, accomplished by Ch. 305 of the Laws of 1963).

Later, he dismissed State Farm's appeal on the strength of his holdings in the Bureau's case. He declined to rule on State Farm's contention that the Commissioner's decisions that earned premiums must be compared with paid losses and that

underwriting income must include income derived from invested unearned premium reserves, were not in accordance with law and required reversal whether or not the Commissioner's order was supported by a preponderance of the evidence.

State Farm appealed to this Court and the Commissioner, although he had been upheld in result, also appealed because he thought the court had erred in its reading and construction of the applicable provisions for judicial review. The appeals were argued together, and both will be disposed of in this opinion.

State Farm contends that the Commissioner's rate making function is not legislative but that if it is the appeal provisions do not violate constitutional requirements as to the separation of powers, and that the Commissioner erred as a matter of law on his findings as to loss ratios and underwriting income. The Commissioner and the Bureau concede that the rate making function of the Commissioner is legislative but argue that the judicial review provided by the statute is constitutional and legal. The City of Rockville, which was permitted to intervene in both appeals although its interest in the matter at best would seem to have been minimal, argues that the judicial review provisions are unconstitutional, that the court properly refused to apply a different standard of review, that this Court should not review the legality of the findings of the Commissioner since the lower court did not, and finally that the Commissioner made no errors of law.

We conclude that the review provisions of § 245 of Art. 48A do not do damage to the constitutional requirement of separation of powers and that since the court of first instance did not pass upon whether or not the Commissioner made errors of law in his determination, it would be inappropriate for us to do so.

In the earlier days of the exercise of governmental powers by administrative bodies, there was widespread fear that the delegating of administrative, legislative and judicial powers or functions to a single agency not only violated the theory of separation of powers but spelled its death knell. Emotional resentment against the rise of administrative power by lawyers

and judges rose and resulted in efforts to thwart or destroy this veritable fourth branch of government by invoking the separation of powers theory or using the nondelegation doctrine or requiring a full and complete de novo judicial determination. These efforts had no more success than had the plaintiff in the case of King Canute versus The Sea. Legislatures, national and state, steadily continued to increase administrative agencies and administrative power, 1 Davis, *Administrative Law Treatise* § 1.01 (1958), and as these agencies have proliferated they have come to legislate more than legislatures and to adjudicate more than courts. 1 Cooper, *State Administrative Law,* pp. 1-2 (1965), the author says:

> "In several states, as many as sixty or seventy independent agencies make rules and adjudicate contested cases affecting in varied ways the lives, health, fortunes, safety, labor, and the business of millions of citizens. At a conservative estimate [as of 1965], more than 2000 state administrative agencies are exercising legislative and judicial functions."

The early fears of the bar and bench have largely disappeared with experience. It became apparent that the complex problems of modern social, economic and industrial life for ever-increasing numbers of knowledgeable people could be solved or settled more expeditiously, effectively, cheaply and simply by administrative processes than by the traditional executive, legislative and judicial processes, because the blending of powers in one agency, which operates in its particular field or specialty continuously over the years and produces an expertise and a superior ability both correctly to evaluate specialized questions and to supply correct answers to these questions—often due largely to the staff of permanent, expert employees who serve under the successive heads of the agencies; and secondly, it was recognized that the dangers inherent in government by administrative bodies lie not in the blending of powers in a single body but in permitting that body's power to be beyond check or review.

The checks on administrative power have been supplied. 1

Davis, *op. cit.* § 1.09, pp. 68-69, says that in the establishment and control of administrative agencies in recent decades:

"* * * the principle that has guided us is the principle of check, not the principle of separation of powers. We have had little or no concern for avoiding a mixture of three or more kinds of power in the same agency; we have had much more concern for avoiding or minimizing unchecked power. The very identifying badge of the modern administrative agency has become the combination of judicial power (adjudication) with legislative power (rule making). But we have taken pains to see that the agencies report to and draw their funds from our legislative bodies, that the personnel of the agencies are appointed and reappointed by the executive, and that the residual power of check remains in the judiciary."

The courts have been alert to exercise their residual power to restrain improper exercises of administrative powers whether judicial or legislative in nature. If the legislature has not expressly provided for judicial review, a court will ordinarily utilize its inherent powers to prevent illegal, unreasonable, arbitrary or capricious administrative action. In *Heaps v. Cobb,* 185 Md. 372, 379, this Court said: "The legislature is without authority to divest the judicial branch of the government of its inherent power to review actions of administrative boards shown to be arbitrary, illegal or capricious, and to impair personal or property rights; * * *," and then quoted the opinion in *Hecht v. Crook,* 184 Md. 271, 280:

"Courts have the inherent power, through the writ of mandamus, by injunction, or otherwise, to correct abuses of discretion and arbitrary, illegal, capricious or unreasonable acts; but in exercising that power care must be taken not to interfere with the legislative prerogative, or with the exercise of sound administrative discretion * * *."

Administrative action may be arbitrary or unreasonable if it is not based on or supported by sufficient facts or proper

factual inferences. The Court in *Heaps* at page 378 quoted the language of the Supreme Court in the *Chicago Junction Case*, 264 U. S. 258, 265, 68 L. Ed. 667, 674, that: "To refuse to consider evidence introduced, or to make an essential finding without supporting evidence, is arbitrary action," and added: "Administrative boards in general may be said to act in a quasi judicial capacity insofar as they have the duty to hear and determine facts and, *based on them,* to make decisions.[1]

When the legislature seemingly has conferred upon a state court a too intense right of review in an appeal from an administrative order legislative in nature—that is, a power or requirement to decide the matter de novo by making its own independent findings of fact or to substitute its judgment or discretion for that of the administrative agency, in violation of a state constitutional requirement of separation of powers— nothing in the federal constitution prohibits a state from assigning nonjudicial functions to its courts, *Prentis v. Atlantic Coast Line Co.,* 211 U. S. 210, 53 L. Ed. 150. The courts will if possible construe the appeal statute in a way that makes the review granted constitutional. 4 Davis, *op. cit.* § 29.01, p. 115 ("So strong is the judicial tendency towards the substantial-evidence rule that that rule is often followed even when the statute prescribes a narrower or broader scope of review"); § 29.07, p. 153 ("When the administrative action is deemed nonjudicial, interpretations that provisions for de novo review mean review in accordance with the substantial-evidence rule or something like it are especially common. * * * A test which is between the substantial-evidence test and sub-

---

1. In Board v. Levitt & Sons, 235 Md. 151, 158, the Court, in affirming a zoning reclassification by the Council, said through Prescott, J.:

"We have repeatedly held that the action of zoning or reclassification of zoning is a function that is legislative in nature. However, this does not prevent the Council from making *administrative* findings of fact, drawing administrative inferences, and arriving at administrative conclusions and decisions * * *. After making its administrative findings of fact, etc., the Council is then in a position to exercise its legislative function of granting or denying the petition for reclassification."

stitution of judgment is the test of whether the finding is 'against the manifest weight of evidence' "—citing *Parker v. Department of Registration and Education* (Ill.), 125 N. E. 2d 494) ; 1 Cooper, op. cit. pp. 27, 29 ("A particular problem which has proved troublesome has arisen in connection with statutes vesting in the courts power to grant *de novo* review of agency determinations predicated essentially on legislative or political considerations. * * * Most frequently, the courts say that they will review * * * but will limit the review to typically judicial questions * * *. The state courts not uncommonly strain to discover a means of interpreting the statutes providing for judicial review in a way which will authorize a more limited type of review than a literal reading of the statute would indicate, *i.e.,* review limited to typically judicial questions. * * * In short, where performance of administrative duties will not interfere with the proper fulfillment of the court's higher responsibilities—and especially where the assumption of such duties will provide a check against possibilities of abuse of administrative discretion that would otherwise be remediless—the state courts are not loath to accept responsibilities which are not purely judicial but involve some measure of executive or even legislative responsibility") ; 2 Cooper, *op. cit.* p. 680; 2 Am. Jur. 2d *Administrative Law* § 580 ("Since courts may not be vested with nonjudicial powers they will not readily construe a statute as intended to confer upon them powers inconsistent with the discharge of their inherent judicial functions. Statutes which employ broad terms to confer power of judicial review are not always read literally * * *. Also, the courts will not readily construe a statute as authorizing the court to try facts de novo on review of an order administrative or legislative in nature"). Illustrative cases supporting the texts are listed in the footnote.[2]

---

2. DeMond v. Liquor Control Comm'n (Conn.), 30 A. 2d 547; State Bd. of Medical Registration and Examination v. Scherer (Ind.), 46 N. E. 2d 602; Lesniak v. Fair Employment Practices Comm'n (Mich.), 111 N. W. 2d 790; California Co. v. State Oil and Gas Bd. (Miss. in Banc), 27 So. 2d 542; Peterson v. Livestock Comm'n (Mont.), 181 P. 2d 152; Warner Valley Stock Co. v. Lynch (Ore.), 336 P. 2d 884; Hoover Motor Express Co. v. R. R.

There is much to indicate that the legislature, in completely revising the insurance laws in 1963 to provide judicial review from rate orders or decisions of the Insurance Commissioner, did not intend to require the court to perform nonjudicial functions. This Court had held a number of times before 1963 that the legislature could not impose nonjudicial duties upon the Court. The cases are referred to in *Cromwell v. Jackson,* 188 Md. 8, which held that the Circuit Court could not be called on to issue liquor licenses. The legislature also knew that the cases had firmly established that Maryland courts in reviewing legislative functions and actions would not make independent findings of fact or substitute judicial judgment for that of the administrative agency. Also, it was established that rate regulation in Maryland is legislative in nature. *Bosley v. Dorsey,* 191 Md. 229; *Gregg v. Pub. Serv. Comm'n.,* 121 Md. 1; *Baltimore Gas and Electric Co. v. McQuaid,* 220 Md. 373.

The insurance article of the Code prior to its revision by Ch. 553 of the Laws of 1963 had only one appeal section—§ 312 of Art. 48A (Code, 1957)—which provided that the Commissioner should certify a record "including a statement of all facts considered by said Commissioner on which his finding was based." Additional evidence could be introduced in court. If the court found that the action appealed from was "unlawful, unreasonable or against the substantial weight of the evidence," it was to remand for further proceedings. The 1963 revision provided two types of judicial review from actions of the Insurance Commissioner. One under § 40 of Art. 48A was from actions in which the Commissioner acted in "a quasi-judicial capacity," as § 39 put it, and the other, under § 245, for judicial review of the legislative orders and decisions as to rates and rating organizations. On an appeal from a judicial or quasi-judicial action under § 40 (4), the court is directed to "hear the matter de novo" on the record and any additional evidence offered in court, and decide whether the action ap-

and Pub Util. Comm'n (Tenn.), 261 S. W. 2d 233; So. Canal Co. v. State Bd. of Water Eng. (Tex.), 318 S. W. 2d 619; In re Harmon (Wash.), 323 P. 2d 653; City of Huntington v. State Water Comm'n (W. Va.), 64 S. E. 2d 225; Fire Ins. Rating Bureau v. Rogan (Wis.), 91 N. W. 2d 372.

pealed from was unconstitutional, unlawful or unsupported by competent, material and substantial evidence or by the weight of such evidence, as shown by the whole record and the de novo evidence taken in court.

Section 245 shows in its terms that a different standard was intended in an appeal from a legislative action. This Court had held in 1959 in *Bernstein v. Real Estate Comm'n,* 221 Md. 221, 230, 232, an appeal under the Administrative Procedure Act from the suspension of a real estate license, that "the comparative degree of proof by which a case must be established is the same in an administrative as in a civil judicial proceeding, *i.e.,* a preponderance of the evidence is necessary," and also that if the agency's findings are supported by competent, material and substantial evidence on the whole record "and such findings and conclusions are not against the weight of such evidence," it is the duty of the Court to affirm. At the same time the Court reiterated that despite a broadening to some extent of the scope of judicial review by the administrative procedure statute, "it is clear that the statute did not intend that the court should substitute its judgment for the *expertise* of those persons who constitute the administrative agency from which the appeal is taken."

The legislature followed *Bernstein* by providing in § 245 (1) that the Commissioner's findings of fact in relation to the matter before him must be "supported by a preponderance of the evidence on consideration of the record as a whole." Section 245 (2) states flatly that all such orders or decisions "shall be subject to review by appeal to the Baltimore City court." The appeal is to be on the record before the Commissioner and the court is to affirm, reverse or modify the order appealed from within sixty days. "If the Baltimore City court finds that the Commissioner's order or decision is not supported by the preponderance of the evidence on consideration of the record as a whole, or is not in accordance with law," the court shall reverse or modify the Commissioner's order or decision in whole or in part.

That the legislature did not intend the court to make independent findings of fact or inference or to substitute its judgment for that of the Commissioner is strongly suggested by

the fact that, unlike the appeals from judicial actions of the Commissioner, the appeal in legislative actions is not de novo and the reviewing court does not hear additional evidence. *Cf. Nuger v. Insurance Comm'r,* 238 Md. 55. We read the direction to the court to determine whether or not the Commissioner's order is supported by a preponderance of the evidence to mean that the court must rule whether or not the Commissioner followed the legislative directive to reach a factual conclusion in the matter before him on the basis of a preponderance of the evidence, not to make its own independent decision whether it would have valued the evidence in the same way and reached the same result. The statutory standard imposed on the court is not to decide whether the Commissioner was right in his factual determinations and inferences but whether those determinations could reasonably have been made by a reasoning mind using the preponderance of the evidence test. The reviewing court must decide only whether the Commissioner could reasonably have decided that a preponderance of the whole evidence supported his conclusions of fact, not whether those conclusions were correct. The permission given the court to modify the administrative order or decision refers, we think, to correction of orders or decisions "not in accordance with law" and was not intended to permit a modification on the facts.

Section 245, as we read it, does not impose nonjudicial duties upon the courts. The trier of fact who must decide whether a case or a facet of a case has been proven by a preponderance of the evidence on the whole record must decide where the weight of the evidence lies. "Preponderance of evidence" and "weight of evidence" are largely synonymous.

> "The measure of proof required in cases such as this [divorce case] * * * is, as in ordinary civil cases, a preponderance of the evidence. * * * if it is clear and definite it is enough even though it leaves a residuum of doubt. Preponderance, as thus used, means that the weight of the evidence, tested by the number and character of the witnesses who give it, the inherent probability of the truth of their testimony, their

interest in the issue, their bias, their demeanor on the witness stand, and the manner in which they testified, inclines more heavily to establish the existence or non-existence of facts in respect to which it is offered, than evidence to the contrary." *France v. Safe Deposit & Trust Co.,* 176 Md. 306, 311 (Citations omitted).

In various cases this Court has offered very clear and strong indications, if not holdings, that a court required by statute to decide whether a legislative action is supported by or based on the weight of the evidence on the whole record is not exercising a nonjudicial function in following the mandate of the statute, provided it does not make its own independent findings of fact or inferences and does not substitute its judgment for that of the expert agency.

In *Bernstein, supra,* involving the validity of the suspension of a license (an action often classed as legislative), the Court gave its blessing to the legislative order to the court to decide whether the administrative action was supported by the weight of the evidence. In *Board v. Oak Hill Farms,* 232 Md. 274, the Court found it unnecessary to pass on the constitutionality of a provision of a statute in Prince George's County which directed the court, in its review of zoning decisions (zoning being clearly an ultimate legislative function or act), to reverse if the decision was "against the weight of competent, material and substantial evidence in view of the entire record," but also found it appropriate to indicate that the studied application of the collective judicial minds of the Court to the question showed that if it had been ripe for decision the answer would have been that the legislatively imposed standard of review was constitutional.

After discussing the meaning the Supreme Court had given the term "substantial evidence on the record as a whole" in *Universal Camera Corp. v. National Labor Relations Board,* 340 U. S. 474, 488, 95 L. Ed. 456, 467 ("The substantiality of evidence must take into account whatever in the record fairly detracts from its weight. This is clearly the significance

of the requirement * * * that courts consider the whole record"). We said (at pp. 282-83 of 232 Md.) :

> "The holding of the Supreme Court that in determining substantiality of evidence there must be taken into account whatever in the record fairly detracts from its *weight* emphasizes the observation that there is a thin line between a test based on substantial evidence and one based on weight of evidence. Some statutes or rules have directed the courts to pass on the weight of evidence in administrative appeals, and courts have followed the direction in a number of decisions, federal and state, without feeling that they were exercising an impermissible nonjudicial function in asserting and exercising the power to ascertain whether agency findings are in error because clearly erroneous or against the weight of the evidence or the clear or the manifest weight of the evidence. 2 Am. Jur. 2d, *Administrative Law,* Secs. 661, 681, 682. See also 4 Davis, *Administrative Law,* Secs. 29.08, 29.09, and Jaffe, *Judicial Review: Question of Fact,* 69 Harvard L. Rev. 1020, 1052, et seq.[6]" (Footnote omitted.)

Of the cases cited in note 6, some five were appeals from legislative action by the administrative agency.[3]

In *Board v. Levitt & Sons,* 235 Md. 151, another zoning case, again we did not reach the constitutionality of a weight of evidence test in an administrative appeal because the point had not been raised below, but treated the test as valid for the purposes of deciding the case. Judge Prescott, for the Court, held that zoning is a legislative function but that the Council

---

3. Parker v. Dept. of Registration and Education (Ill.), 125 N. E. 2d 494; In re N. J. Power & Light Co. (N. J.), 89 A. 2d 26; So. Ry. System v. Pub. Util. Comm'n (Ohio), 141 N. E. 2d 149; Atlantic Coast Line R. R. Co. v. Pub. Serv. Comm'n (S. C.), 81 S. E. 2d 357; Manlowe Transfer & Distributing Co. v. Dept. of Pub. Serv. (Wash.), 140 P. 2d 287. See also Colteryahn Sanitary Dairy v. Milk Control Comm'n (Pa.), 1 A. 2d 775; Benedict v. Board of Police Pension Fund Comm'rs (Wash.), 214 P. 2d 171.

must adjudicate facts and based on its findings of fact exercise its legislative role of granting or denying zoning. He quoted from *Oak Hill Farms* that (pp. 159-60 of 235 Md.) as follows:

> " 'Whether the test of substantial evidence on the entire record or the test of against the weight of all the evidence is followed, the courts have exercised restraint so as not to substitute their judgments for that of the agency and not to choose between equally permissible inferences or make independent determinations of fact, because to do so would be exercising a nonjudicial role. Rather, they have attempted to decide whether a reasoning mind could reasonably have reached the result the agency reached upon a fair consideration of the fact picture painted by the entire record.
>
> " 'In the cases dealing with consideration of the weight of the evidence, the matter seems to have come down to whether, all that was before the agency considered, its action was clearly erroneous or, to use the phrase which has become standard in Maryland zoning cases, not fairly debatable. 73 C.J.S. *Public Administrative Bodies and Procedure,* Sec. 225,' "

and indicated agreement with *Oak Hill's* conclusion that the line between the test of substantial evidence on the whole record and that of the weight of the evidence is thin and hard to draw, saying (at p. 160) : "An examination of the authorities clearly shows that the line of demarcation is subtle and tenuous in nature." Judge Prescott continued:

> "Applying the above principles to the facts, we think that a reasoning mind could reasonably have reached the result arrived at by the Council upon a fair consideration of the entire record, and we do not think that its action was clearly erroneous or not fairly debatable."

In *State Board v. Ruth,* 223 Md. 428, the Court reversed the Circuit Court and upheld the State Board of Registration

for Professional Engineers and Land Surveyors in its refusal to license Ruth as a professional engineer without examination. The Board's function in issuing or not issuing such a license would clearly be legislative in nature under *Cromwell v. Jackson, supra.* The Court reiterated that in exercising judicial review there is not to be a judicial substitution of judgment for that of the administrative body. After reviewing the evidence before the Board, Chief Judge Brune, for the Court, held (at pp. 439-40 of 223 Md.) :

"Not even the provision of the APA permitting the court to reverse a finding because it is against the weight of the evidence (§ 255 (g)) would support the trial court's order in this case. The Board applied, and properly applied, its expert knowledge to the evidence before it. We cannot find that in so doing, on the data before it, it reached a finding against the weight of the evidence, still less that it acted arbitrarily."

In *Kaufman v. Taxicab Bureau,* 236 Md. 476, which upheld the refusal to issue Kaufman a license, the Court referred to all of the criteria of § 255 (g) of the Administrative Procedure Act (which includes the weight of the evidence test) and said (at p. 484) : "we have applied each of said criteria to the trial court's action and we find no error."

Whichever of the recognized tests the court uses—substantiality of the evidence on the record as a whole, clearly erroneous, fairly debatable or against the weight or preponderance of the evidence on the entire record—its appraisal or evaluation must be of the agency's fact-finding results and not an independent original estimate of or decision on the evidence. The required process is difficult to precisely articulate but it is plain that it requires restrained and disciplined judicial judgment so as not to interfere with the agency's factual conclusions under any of the tests, all of which are similar. There are differences but they are slight and under any of the standards the judicial review essentially should be limited to whether a reasoning mind reasonably could have reached the factual conclusion the agency reached. This need not and must not be either judicial fact-finding or a substitution of

judicial judgment for agency judgment. See 4 Davis, op. cit. §§ 29.01, 29.02, 29.03, 29.06, 29.07, 29.10; 2 Cooper, op. cit. Ch. XIX, § 7; 2 Am. Jur. 2d *Administrative Law* §§ 616, 620, 621, 659, 661; the majority and concurring opinions in *NLRB v. Southland Mfg. Co.,* 201 F. 2d 244; *Board v. Oak Hill Farms* and *Board v. Levitt & Sons,* both *supra.*

We hold that a court in reviewing legislative actions or decisions of an administrative agency may apply the weight of the evidence test to the factual findings of the agency, without exercising nonjudicial functions, provided it does not itself make independent findings of fact or substitute its judgment for that of the agency. Section 245 of Art. 48A, properly construed, does no more than permissibly require the court to decide (1) the legality of the Insurance Commissioner's actions, and (2) whether a reasoning mind reasonably could have determined that the factual conclusion reached was proven by the weight of the evidence on the record as a whole.

> *Orders in No. 600 and No. 639 reversed, with costs, and cases remanded to the Baltimore City Court for further proceedings.*

BARNES, J., dissenting:

I dissent because in my opinion Chief Judge Foster correctly held in the lower court (1) that the provision of Code, Article 48A, section 245(2) that the trial court on appeal from a legislative action by the State Insurance Commissioner may reverse or modify the Commissioner's order or decision if it "is not supported by the preponderance of the evidence on consideration of the record as a whole" was unconstitutional and (2) that this provision was not severable so that no part of section 245(2) or any other provision in Article 48A in regard to appeals to the Baltimore City Court could be applied by the trial court.

### (1)

Article 8 of the Declaration of Rights of the Maryland Constitution provides:

> "That the Legislative, Executive and Judicial powers of Government ought to be forever separate and

distinct from each other; and *no person exercising the functions of one of said Departments shall assume or discharge the duties of any other."*
(Emphasis supplied.)

It will be observed that although the doctrine of separation of governmental powers between the three great divisions of government is stated in hortatory terms, the implementation of that great principle to insure the freedom and liberty of the individual citizen is in *mandatory* terms addressed to each official of the State government. It is clear to me that this means that judges, whose courts possess *all* of the judicial power of the State government, *Dal Maso v. Board of County Comm'rs of Prince George's County,* 182 Md. 200, 34 A. 2d 464 (1943), may not constitutionally exercise legislative power. Although the courts have the power and the obligation to declare unconstitutional legislation which violates constitutional guarantees, they have no power *to amend* a legislative act for the obvious reason that they are not permitted under Article 8 of the Declaration of Rights to exercise a legislative function. We have held that we may not under the guise of construction of a statute, in effect, amend it. *Amalgamated Casualty Ins. Co. v. Helms,* 239 Md. 529, 534-35, 212 A. 2d 311, 315 (1965).

Alas, as I see it, what the majority has done in the case at bar is, in effect, to amend section 245(2) by construction. I will consider this more fully later in this dissenting opinion.

Not only may the courts not exercise either legislative or executive power, but the other branches of the State government may not exercise judicial power, which has been given exclusively to the courts by Article IV of the Maryland Constitution. *Dal Maso v. Board of County Comm'rs of Prince George's County, supra.* See also *Heaps v. Cobb,* 185 Md. 372, 45 A. 2d 73 (1945). Nor, as the majority points out, may the General Assembly constitutionally impose either executive, legislative or other non-judicial powers upon the courts. *Cromwell v. Jackson,* 188 Md. 8, 52 A. 2d 79 (1947).

The essence of the judicial fact-finding process lies in the evaluation of evidence. In a civil case, the plaintiff must estab-

lish his case by a preponderance of the evidence. The determination of whether the plaintiff has accomplished this does indeed, as the majority indicates, depend upon the "weight" of evidence. To determine the weight of evidence, the trier of fact —the jury in a jury case, the court in a non-jury case —must evaluate or "weigh" the testimony presented to ascertain the "preponderance of the evidence." The trier of fact must determine whether the plaintiff has established his case by the *greater* weight of the testimony. It is well established that the *number* of witnesses does not establish the preponderance of the evidence.

As Judge Offutt, for the Court, in *Carter v. Carter*, 139 Md. 265, 267-268, 114 Atl. 902, 903 (1921), aptly stated:

> " 'Preponderance,' used in connection with the weight of evidence, refers to something more than the number of witnesses who furnish it. It relates not only to the number of witnesses who testify to a fact or facts in issue, but also to the character of the witnesses, and to the intrinsic characteristics of the evidence itself, and the probabilities of its truth when tested by the ordinary experience of average people in their daily affairs. Courts should not disassociate testimony from the witnesses who give it, because if the witnesses are unworthy of confidence their testimony naturally has little value."

To the same effect see *Garver v. Garver*, 52 Colo. 227, 232, 121 P. 165, 166-167 (1912), in which Mr. Justice White stated for the Supreme Court of Colorado:

> "The preponderance of the evidence is never determined by the number of witnesses, but by the greater weight of all the evidence. And the greater weight does not necessarily mean a greater number of witnesses who testify on either side of the issue or issues involved. Witnesses may be of 'equal candor, fairness, intelligence, and truthfulness,' and be equally well corroborated by all the other evidence, and may have no great interest in the result of the suit, yet

the weight to be given their testimony may differ materially. The opportunity for knowledge, the information possessed, the manner of testifying, and many other things that go to convince the mind, must be taken into consideration."

I agree fully with the majority that the establishment of insurance rates by the Commission is the exercise of a delegated legislative power. I further agree that the courts have the inherent power in the exercise of their protection of constitutional rights to declare a legislative act or the exercise of legislative power unconstitutional and void if such an act or exercise of legislative power is arbitrary, unreasonable or capricious and thus denies the citizen of his life, liberty or property without due process of law. *Heaps v. Cobb,* 185 Md. 372, 379, 45 A. 2d 73, 76 (1945).

The majority correctly equates "preponderance" with "weight" of the evidence on the whole record. I part with the majority, however, when they further equate "preponderance" with the requirement of the presence of "substantial evidence," or the equivalents of "substantial evidence," such as "when a reasoning mind could reach the result" or whether the issue was "fairly debatable." I cannot believe this can properly be done as a matter of statutory construction. There is, in my opinion, an important difference between the standard of whether there is sufficient evidence to go to the trier of fact for consideration and how the trier of fact evaluates that evidence after the case is before it for determination. There is the difference between the irreduceable minimum of evidence to justify determination *at all* and a sufficient *quantum* of testimony for recovery.

The General Assembly in the Administrative Procedure Act [1] provides for appellate tests indicating these differences in degree. In Code, Article 41, sec. 255(g) eight tests are provided for the guidance of the reviewing court, any one of which may result in reversal or modification of the agency's decision. Among them are:

---

1. Act of 1957, Chapter 94, as amended.

"(5) *Unsupported* by competent, material, and substantial evidence in view of the entire record as submitted; or

"(6) Against the *weight* of competent, material and substantial evidence in view of the entire record, as submitted by the agency *and including de novo evidence taken in open court;*" (Emphasis supplied.)

*Bernstein v. Real Estate Commission,* 221 Md. 221, 156 A. 2d 657 (1959), relied on by the majority, gives no support, in my opinion, to the conclusion reached by the majority in the present case. *Bernstein* involved the validity of an order of the Real Estate Commission of Maryland suspending the licenses of a real estate broker and his associate. It is entirely clear that on the appeal under the provisions of the Administrative Procedure Act, the reviewing court did take evidence *de novo* and made its determination upon both the record before the Commission and the *de novo* testimony. This Court stated:

"The trial court found that there was competent, material and substantial evidence in the entire record as submitted including the *de novo* evidence taken in open court—not overcome by countervailing evidence —to support the commission's finding of fact and conclusion of law to the effect that the brokers had violated one of the provisions of Section 224(o) [of Art. 56]. We agree." (Page 234-35 of 221 Md., page 664 of 156 A. 2d.)

The situation was quite different from the case at bar, where the reviewing court in considering an order of the Commission establishing rates is not permitted to take testimony *de novo,* and, indeed, could not, in my opinion, be permitted to do this as this would clearly impose a legislative function upon the Court, i.e., to determine what the rate should be. The decision in *Bernstein* indicates to me that the determination by the trial court was of a judicial matter and was not a legislative one.

It is clear also that by the express provision of Code, Article 41, section 244(a), the Administrative Procedure Act is not applicable to the State Insurance Department.

When one compares the final test laid down by the majority, i.e., "whether a reasoning mind reasonably could have determined that the factual conclusion reached was proven by the weight of the evidence on the record as a whole," and that imposed by section 245(2) viz. "If the Baltimore City Court finds that the Commissioner's order or decision is not supported by the preponderance of the evidence on consideration of the record as a whole," it is apparent to me that there is a substantial difference between what the General Assembly stated and what the majority holds that it meant. The majority here blends "reasonably" (the equivalent of "supported by substantial evidence") with "weight," and says that the blended result is the same as the statutory "preponderance" ("weight") test. In my opinion, the majority is not permitted to reach this conclusion as it is, in effect, an amendment to the statute and substitutes a new test for the one set forth by the General Assembly.

I have been critical of what I consider a departure from the doctrine of separation of powers by this Court in a number of prior cases. See my dissenting opinions in *MacDonald v. Board of County Comm'rs of Prince George's County,* 238 Md. 549, 557 to 608, especially pages 602-608, 210 A. 2d 325, 329-358, especially pages 354-358 (1965); *Woodlawn Area Citizens Ass'n v. Board of County Comm'rs of Prince George's County,* 241 Md. 187, 201-218, especially pages 203-213, 216 A. 2d 149, 158-168, especially pages 159-165 (1966) and most recently in *Delbrook Homes, Inc. v. Mayers,* 248 Md. 80, 234 A. 2d 880 (1967); and my concurring opinions in *Hyson v. Montgomery County Council,* 242 Md. 55, 77-84, 217 A. 2d 578, 592-595 (1966) and *Gaywood Community Ass'n v. Metropolitan Transit Authority,* 246 Md. 93, 101-105, 227 A. 2d 735, 739-742 (1967).

Several of these dissenting or concurring opinions indicated disagreement with the concept of *res judicata* as applied to decisions of administrative agencies. Others involved the importance of safeguards required for judicial hearings to legis-

lative action when not required by statute. In Part IV of my dissent in *MacDonald,* however, I considered, in part, the constitutionality of a provision of the Act of 1959, Chapter 780 (for the prior act see Acts of 1957, Chapter 712), then codified as Subtitle 59-85(i) of the Prince George's County Code which provided that in considering the rezoning decision of the District Council, the Circuit Court for Prince George's County could reverse the District Council for seven listed tests, one of which was if the court found that the decision was "(6) against the weight of competent, material and substantial evidence in view of the entire record, as submitted by the agency." It was pointed out that in four cases prior to *MacDonald,* this provision was possibly involved but we had declined to pass upon its validity. These four prior cases were *Board of County Comm'rs of Prince George's County v. Donohoe,* 220 Md. 362, 152 A. 2d 555 (1959) ; *Bishop v. Board of County Comm'rs of Prince George's County,* 230 Md. 494, 187 A. 2d 851 (1963) ; *Board of County Comm'rs of Prince George's County v. Oak Hill Farms, Inc.,* 232 Md. 274, 192 A. 2d 761 (1963) ; and, *Board of County Comm'rs of Prince George's County v. Levitt & Sons, Inc.,* 235 Md. 151, 200 A. 2d 670 (1964). In *Donohoe* the Court indicated that even if the challenged subsection (6) "should be declared invalid" that subsection was not "inseparably connected with" the subsections concededly valid and there was no reason to suppose that the Act would not have been passed without subsection (6). In *Sampson Bros. v. Board of County Comm'rs of Prince George's County,* 240 Md. 116, 213 A. 2d 289 (1964), the Court again found it unnecessary to pass upon the constitutionality of subsection (6), and referred to the prior cases in which such a determination was also unnecessary.

In footnote 11 in my dissent in *MacDonald* (238 Md. 607, 210 A. 2d 358), I respectfully suggested to the General Assembly that a happy solution in regard to subsection (6) would be to repeal it. I was pleased to note that subsection (6) was repealed by the Acts of 1965, Chapter 898. As I had suggested in footnote 11, that subsection (6) might "even be an invalid grant of legislative power," the repeal of this subsection indicates to me that the General Assembly was most likely of the

opinion that subsection (6) was indeed an invalid grant of legislative power. I also pointed out in the *MacDonald* dissent that Judge Powers of the Seventh Judicial Circuit was of the opinion that subsection (6) was unconstitutional. See 238 Md. 607-608, 210 A. 2d 358.

The distinction between the holdings in *Sampson* and in *Oak Hill Farms,* referred to above, was pointed out in *Sampson* as follows:

"'This case is to be distinguished from *Board of County Commissioners of Prince George's County v. Oak Hill Farms,* 232 Md. 274, 192 A. 2d 761 (1963) as in that case the disapproval of the Technical Staff was based upon a *tentative* master plan which it had prepared, but which had not been adopted and indeed never was adopted as proposed. In *Oak Hill Farms* there was *no* competent, material and substantial evidence to support the District Council's refusal to reclassify and the Circuit Court so held. In the case at bar the Master Plan *had been adopted*— less than one month before the petitions were filed— and it was clearly debatable as to whether there was any substantial change in conditions to justify a change contrary to that recently adopted Master Plan." (240 Md. 120, 213 A. 2d 291-292.)

The distinction between the "substantial evidence" test and the "weight of the evidence" test is aptly considered by Leonard E. Cohen, *Some Aspects of Maryland Administrative Law,* 24 Md. L. Rev. 1 (1964) 38-42. After reviewing the language in the opinion in *Oak Hill Farms* indicating that the difference between the two tests was "difficult to delineate" and that the line between them was "thin", the author commented as follows:

"On the facts of the Oak Hill Farms case, this reasoning is understandable in that there was practically no evidence to support the decision of the County Commissioners. The decision would have been reversible under either of the two tests. The question

remains, however, whether the court will also equate the substantial evidence rule with the weight of the evidence rule in a case where the result could depend on which test is employed. To explain, first assume a set of facts similar to those in the *Oak Hill Farms* case. There are one hundred pieces of evidence in favor of proposition I and only one piece of evidence in favor of proposition II. Although there would be evidence supporting proposition II, it would clearly not be substantial evidence, considering the evidence to the contrary. Also, the weight of the evidence would clearly be in favor of proposition I. Next assume that five pieces of evidence favor proposition I and one piece of evidence favors proposition II. This is similar to the illustration given at the beginning of this section. It would seem that, even taking into account the contrary evidence, there would be substantial evidence supporting proposition II, assuming that the one piece of evidence is of a reliable nature. Nevertheless, it would also seem that the weight of the evidence is against proposition II. In this type of situation, the test employed would probably be determinative. If under these circumstances the Court of Appeals still equates the substantial evidence test with the weight of the evidence test, it would be ignoring the fact that the leading writers in the field of administrative law have recognized a meaningful difference between the two tests."

My view finds support in two Texas cases. See *Southern Canal Company v. State Board of Water Engineers,* 311 S. W. 2d 938 (Texas Civ. App. 1958), affirmed by the Supreme Court of Texas, 159 Tex. 227, 318 S. W. 2d 619 (1958). See also *Farmers and Merchants Insurance Co. v. State Board of Insurance,* 321 S. W. 2d 354 (Texas Civ. App. 1959).

As the lower court pointed out, the striking down as unconstitutional of the provisions of Section 245(2) does not mean that there is no remedy afforded to an insured party from an allegedly improper rate action by the Commissioner.

A person aggrieved by such an order may seek relief in equity or by way of the issuance of a writ of mandamus, if the Commissioner's action is arbitrary, unreasonable or capricious and, thus denies the person due process of law. *Heaps v. Cobb, supra.*

## (2)

In my opinion, the unconstitutional "preponderance of evidence" test in section 245(2) is not severable from the statute and Chief Judge Foster was correct in dismissing the appeals to the Baltimore City Court of the Bureau and of State Farm. Notwithstanding the severability clause in section 13, it seems clear that section 245(3) establishes a legislative intent that the provisions of sections 35 to 40 providing for a *de novo* hearing on appeal, with substantially the eight tests for modification or reversal of the order of Commissioner as contained in the provisions of the Administrative Procedure Act relating to appeals, "shall not apply to rating." This mandatory provision should not be ignored. Nor does the alternative provision in section 245(2) "or not in accordance with law", which follows the review of the evidence provision, provide a test which the General Assembly could be thought to have provided if the "preponderance of evidence" test were not part of section 245(2). There is a clear legislative intent to provide for a full and intensive review by the Baltimore City Court of the decision of the Commissioner in regard to rates and this legislative intent would be frustrated by an attempt to continue a fragmented section 245(2) with a most limited test of "not in accordance with law." The two provisions of section 245(2) are dependent and cannot be separated. In order to separate the second clause from the unconstitutional clause, the valid part must be independent of and separable from the void portion. *Schneider v. Duer,* 170 Md. 326, 340, 184 Atl. 914, 921 (1936). As indicated, this is not the situation here presented.

I would affirm the orders of the lower court.