STATE OF NORTH CAROLINA ex rel. COMMISSIONER OF INSUR-
ANCE v. NORTH CAROLINA AUTOMOBILE RATE ADMINIS-
TRATIVE OFFICE, NATIONWIDE MUTUAL INSURANCE
COMPANY, STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY, ALLSTATE INSURANCE COMPANY, THE AETNA
CASUALTY AND SURETY COMPANY, THE TRAVELERS IN-
DEMNITY COMPANY, HARTFORD ACCIDENT AND INDEMNITY
COMPANY, GREAT AMERICAN INSURANCE COMPANY,
UNITED STATES FIDELITY AND GUARANTY COMPANY, LUM-
BERMEN'S MUTUAL CASUALTY COMPANY, LIBERTY MUTUAL
INSURANCE COMPANY, IOWA NATIONAL MUTUAL INSUR-
ANCE COMPANY, ST. PAUL FIRE AND MARINE INSURANCE
COMPANY, UNIGARD MUTUAL INSURANCE COMPANY, MARY-
LAND CASUALTY COMPANY, THE SHELBY MUTUAL IN-
SURANCE COMPANY, AMERICAN MOTORISTS INSURANCE
COMPANY, AMERICAN MUTUAL LIABILITY INSURANCE
COMPANY, MIDWEST MUTUAL INSURANCE COMPANY, UNI-
VERSAL UNDERWRITERS INSURANCE COMPANY, and BAL-
BOA INSURANCE COMPANY

No. 7510INS929

(Filed 18 August 1976)

1. **Insurance § 79.1— motorcycle liability insurance rates — consideration
of withdrawn filing**

It was improper for the Commissioner of Insurance to consider
a 1970 motorcycle liability insurance rate filing which the Automobile
Rate Administrative Office had requested be withdrawn since (1) a
new filing was mandated by G.S. 58-30.3 and G.S. 58-30.4 and (2)
the Rate Office had the right to withdraw the 1970 filing.

2. **Insurance § 79.1— automobile liability insurance — revision of classifi-
cations and rates — applicability of statute to motorcycles**

Although G.S. 58-30.4 refers to revised classifications and rates
for private passenger "automobiles," the statute also applies to motor-
cycles since at the time of the enactment of the statute the General
Assembly was aware that the word "automobiles" as used in Article
25 of G.S. Chapter 58 had been interpreted by the courts to include
motorcycles.

3. **Insurance § 79.1— automobile liability rates — function of Rate Office
— authority of Insurance Commissioner**

G.S. 58-248.1 does not permit the Commissioner of Insurance to
ignore the function of the Automobile Rate Administrative Office and
encroach upon its authority to propose rates for automobile and motor-
cycle liability insurance.

4. **Insurance § 79.1— automobile liability rates — authority of Insurance
Commissioner**

The authority of the Commissioner of Insurance to approve or
disapprove automobile insurance rates and classifications pursuant to
G.S. 58-248 is no greater than his authortiy to revise improper rates

or classifications according to G.S. 58-248.1, the only noticeable differ-
ence between the two statutes being that G.S. 58-248 governs ex-
clusively the approval or disapproval of proposed rates and
classifications filed by the Rate Office, whereas G.S. 58-248.1 author-
izes the Commissioner to revise improper rates and classifications,
presently charged or filed, on his own motion.

5. **Insurance § 79.1— automobile liability rates — action by Insurance
Commissioner — necessity for evidence and findings of fact**

Whether the Commissioner of Insurance elects to approve or
disapprove a rate proposal pursuant to G.S. 58-248 or to revise a
proposal pursuant to G.S. 58-248.1, his action must be supported by
substantial evidence and comprehensive findings of fact therefrom
which comply with the standard prescribed by G.S. 58-248.

6. **Insurance § 79.1— motorcycle liability insurance — classifications and
rates — insufficiency of evidence and findings**

Order by the Commissioner of Insurance revising the classifica-
tions and rates for motorcycle liability insurance was not supported
by substantial evidence or necessary findings of fact.

Judge MARTIN dissents.

APPEAL by defendants from Ingram, Commissioner of In-
surance. Order entered 22 August 1975. Heard in the Court
of Appeals 10 March 1976.

This appeal is an outgrowth of the order entered by the
Commissioner of Insurance on 22 August 1975 which revised
the classification plan and rates for motorcycle liability insur-
ance in North Carolina.

On 18 June 1975 the North Carolina General Assembly
enacted House Bill 28 (Session Laws of 1975, Chapter 666),
codified as G.S. 58-30.3 and G.S. 58-30.4, entitled "AN ACT TO
ABOLISH AGE DISCRIMINATION IN AUTOMOBILE INSURANCE CLAS-
SIFICATIONS AND TO IMPLEMENT CLASSIFICATIONS WHICH ES-
TABLISH OBJECTIVE STANDARDS FOR RATES." Two days later the
Commissioner of Insurance published notice of a public hearing
for the following purposes:

"I. On Petition of the North Carolina Automobile Rate
Administrative Office, to rehear and determine a filing of
the North Carolina Rate Administrative Office dated May
7, 1970, for a 'Revised Classification and Rating Procedure
—Motorcycles.'

"II. On Motion of the Commissioner of Insurance pur-
suant to the provisions of G.S. 58-248.1, to abolish age dis-

crimination in motorcycle insurance classifications pursuant to the provisions of House Bill 28, ratified by the General Assembly of North Carolina on June 18, 1975; to review the present weight classification system for motorcycle liability insurance to determine whether all remaining classifications for motorcycle liability insurance meet the standards prescribed by G.S. 58-248.1; to determine whether the rates in general for motorcycle liability insurance are excessive or otherwise not in compliance with law; and to issue such corrective orders as are necessary."

The hearing was scheduled to begin on 11 July 1975, and a prehearing pursuant to G.S. 58-248.1 was scheduled for 25 June 1975. At the prehearing the Rate Office objected to the proposed hearing on the grounds that the 7 May 1970 filing was obsolete and no longer subject to review by the Commissioner. The Commissioner overruled this objection.

On 9 July 1975 the Rate Office mailed a circular letter to members of the Governing Committee. The letter stated in pertinent part:

"A copy of House Bill 28 which was enacted by the North Carolina General Assembly and ratified on June 18, 1975, was attached to a circular letter to the Governing Committee issued on that same date. That circular letter included the recommendation of the undersigned that the task of formulating recommendations for compliance with this new law by the Rate Administrative Office be assigned to the Subcommittee on Rates. There was no objection to that recommendation, and the Subcommittee was requested so to proceed.

"Three Subcommittee meetings have been held since the aforementioned circular letter was issued. The meeting dates were June 19 and 26 and July 7. The exhibits attached hereto present revised classification and subclassification plans for private passenger cars and motorcycles reflecting the recommendations of the Subcommittee as understood by the undersigned.

. . . .

"It is recommended that the enclosed amended rules and rates be adopted by the Governing Committee for filing with the Commissioner of Insurance for approval . . . "

The following day, on 10 July 1975, the Rate Office filed a verified response to notice, motion for intervention, and motion to dismiss prehearing conference. In support of these motions the Rate Office (1) referred to its duty and authority to promulgate rates and classifications for motorcycle liability insurance; (2) asked that the 7 May 1970 filing be withdrawn, and repeated its contention that the 7 May 1970 filing was obsolete due to the Commissioner's earlier rejection of that filing in a 1 May 1974 order, which was subsequently reversed and vacated by the North Carolina Court of Appeals in *Comr. of Insurance v. Automobile Rate Office*, 24 N.C. App. 223, 210 S.E. 2d 441 (1974), *cert. denied* 286 N.C. 412, 211 S.E. 2d 216 (1975) ; (3) argued that the prehearing meeting conducted on 25 June 1975 was premature and improper because the Rate Office had no valid filing pending before the Commissioner; and moved for dismissal of the prehearing conference; (4) argued that the Commissioner had no authority to conduct the proposed hearing because it would prevent and preclude the Rate Office from performing its legal duties and responsibilities under the law of preparing and filing with the Commissioner of Insurance for his approval a revised basic classification plan and a revised subclassification plan for automobile and motorcycle liability insurance under the provisions of G.S. 58-30.3 and G.S. 58-30.4; and (5) argued that it (the Rate Office) was a necessary party to the proceeding and asked that it be permitted to make a filing as required by G.S. 58-30.3 and G.S. 58-30.4.

On the same day, Balboa Insurance Company, Midwest Mutual Insurance Company, and Universal Underwriters Insurance Company filed a similar response to notice, motion for intervention, and motion to dismiss prehearing conference, based on "the motion of the Rate Office that no further action be taken in this proceeding until the Rate Office has completed its motorcycle liability insurance filing and public hearings thereon have been set in accordance with law; and that the prehearing conference heretofore held be dismissed and treated as a nullity."

On the following day (11 July 1975) the hearing was convened. The Commissioner received in evidence the record of the prehearing meeting, which included the record of the previous hearing on the 7 May 1970 motorcycle liability insurance filing. In addition, the Commissioner called Rate Office Assistant General Manager John Watkins, Jr., as a witness and questioned

him about the forthcoming classification and rate filing by the Rate Office, and heard arguments on the motions filed by the Rate Office and the three insurance companies mentoned above. The motions were denied, and the Commissioner proceeded with the hearing on the basis of the 1970 filing and G.S. 58-248.1.

Thereafter Dock Hamm was qualifed as an expert in the marketing of motorcycles in North Carolina and testified that the experience of the operator, not size or use, is the most important determinant of exposure to risk of motorcycles.

On 15 July 1975 the Rate Office submitted its filing for motorcycle liability insurance to comply with G.S. 58-30.3 and G.S. 58-30.4, entitled "Re: Revised Classification and Sub-Classifcation Plan—Motorcycles." Mr. Paul Mize, Rate Office general manager, testified at length about the Rate Office's interpretation of House Bill 28 and the preparation of the filing. In addition to Mr. Mize's testimony, the filing was supported by extensve exhibits. An amendment to the filing was filed with the Commissioner on 29 July 1975 and subsequently explained by the testimony of Mr. Mize on 4 August 1975.

On 4 August 1975 Robert Holcombe testified as "an expert in the field of liability insurance rate analysis"; based on data prepared for and offered with the 5 May 1970 filing plus extensive calculations of his own, Mr. Holcombe recommended new motorcycle liability insurance rates of $17.00 for $15,000/30,000/5,000 coverage of light motorcycles and $37.00 for the same coverage of heavy motorcycles. The hearing ended on 4 August. By exhibit filed 19 August 1975 Mr. Holcombe modified his calculations somewhat and recommended rates of $17.00 for $15,000/30,000/5,000 coverage of light motorcycles and $38.00 for the same coverage of heavy motorcycles.

After making findings of fact and conclusions of law, the Commissioner entered an order dated 22 August 1975, which, in pertinent part, provides:

"1. That the existing classification system for motorcycle liability insurance is hereby terminated effective September 2, 1975.

"2. That the May 7, 1970 filing of the Rate Office and the July 15, 1975 proposal of the Rate Office as modified by its July 27, 1975 proposal are rejected and disapproved.

"3. That effective September 2, 1975, the premium rate charged and collected for motorcycle liabiltiy insurance and the classification system for such insurance be as set forth in the following classification system and premium rate schedule:

|                         | Code 9510 and 9600 (not over 324 c.c.) | Code 9520 and 9610 (over 324 c.c.) |
|-------------------------|:-------:|:-------:|
| 15/30 Bodily Injury     | $12     | $29     |
| 5000 Property Damage    | 5       | 9       |
| Total                   | $17     | $38"    |

From this order the Rate Office and numerous insurance companies appealed.

*Attorney General Edmisten, by Assistant Attorney General Isham B. Hudson, Jr., for the plaintiff.*

*Allen, Steed and Pullen, by Arch T. Allen and Lucius W. Pullen; Broughton, Broughton, McConnell & Boxley, by J. Melville Broughton, Jr.; Manning, Fulton & Skinner, by Howard E. Manning; Young, Moore & Henderson, by R. Michael Strickland; and Bailey, Dixon, Wooten, McDonald & Fountain, by Wright T. Dixon, Jr., for the defendants.*

BROCK, Chief Judge.

[1] Initially, the defendants argue that it was improper for the Commissioner to review the 1970 filing. We agree. A new filing was mandated by G.S. 58-30.3 and G.S. 58-30.4, and a review of the 1970 filing could serve no present purpose. The request of the Rate Office to be allowed to withdraw the 1970 filing should have been granted. *Comr. of Insurance v. Rating Bureau,* 29 N.C. App. 237, 224 S.E. 2d 223 (1976). Apparently the Commissioner's sole purpose in undertaking to review the 1970 filing was to use data from that proposal to formulate the rates adopted in his 22 August 1975 order. Such was clearly unnecessary. The Commissioner is authorized by G.S. 58-248 "to compel the production of all books, data, papers and records and any other data necessary to compile statistics for the purpose of determining the underwriting experience of automobile [motorcycle] liability injury and property damage insurance and the other lines of insurance referred to in this Article. . . . "

On 18 June 1975 the General Assembly ratified "AN ACT TO ABOLISH AGE DISCRIMINATION IN AUTOMOBILE INSURANCE

CLASSIFICATIONS AND TO IMPLEMENT CLASSIFICATIONS WHICH ESTABLISH OBJECTIVE STANDARDS FOR RATES," G.S. 58-30.3 and G.S. 58-30.4. These sections provide as follows:

"§ 58-30.3. Discriminatory practices prohibited.—No insurer shall after September 1, 1975, base any standard or rating plan for private passenger automobiles or motorcycles, in whole or in part, directly or indirectly, upon the age or sex of the persons insured.

"§ 58-30.4. Revised classifications and rates. — The North Carolina Automobile Rate Administrative Office shall file with the Commissioner of Insurance for his approval or other action as provided in G.S. 58-248.1 a revised basic classification plan and a revised subclassification plan for coverages on private passenger (nonfleet) automobiles in this State affected by the provisions of G.S. 58-30.3. Said revised basic classification plan will provide for the following four basic classifications, to wit: (i) pleasure use only; (ii) pleasure use except for driving to and from work; (iii) business use; and (iv) farm use. The North Carolina Automobile Rate Administrative Office shall file with the Commissioner of Insurance for his approval or other action as provided in G.S. 58-248.1 a revised subclassification plan with premium surcharges for insureds having less than two years' driving experience as licensed drivers, or having a driving record consisting of a record of a chargeable accident or accidents, or having a driving record consisting of a conviction or convictions for a moving traffic violation or violations, or any combination thereof. Said subclassification plan shall be designed to provide not less than one forth of the total premium income of insurers in writing and servicing the aforesaid coverages in this State.

"The revised basic classification and subclassification plans specified in this section shall supersede the existing basic classification and subclassification plans on the hereinabove specified coverages.

"The Commissioner is authorized and directed to implement the plans provided for in this section on September 2, 1975."

**[2]** The Rate Office contends that both G.S. 58-30.3 and G.S. 58-30.4 apply to private passenger automobiles and motorcycles. We agree. In 1974 we held:

"Such authority as the Commissioner has with respect to motorcycle liability insurance rates is contained in Article 25 of G.S. Chap. 58, which also provides for the creation and prescribes the functions of the North Carolina Automobile Rate Administrative Office. The word 'motorcycle' does not appear in Article 25 of G.S. Chap. 58, but the statutes in that Article use the words 'automobile' and 'motor vehicles which are private passenger vehicles' and 'private passenger vehicles' interchangeably, and although none of these terms are further defined in G.S. Chap. 58, we hold that 'automobile' liability insurance includes 'motorcycle' liability insurance and that the same laws apply to both." *Comr. of Insurance v. Automobile Rate Office*, 24 N. C. App. 223, 210 S.E. 2d 441 (1974).

At the time of the passage of G.S. 58-30.3 and G.S. 58-30.4, the Legislature was aware of our interpretation as set out above. Had it chosen to make a distinction in G.S. 58-30.4 between "automobiles" and "motorcycles," it would have done so.

On 11 July 1975 the Rate Office filed with the Commissioner a proposal for revised classifications and rates for motorcycles, and this proposal was disapproved by the Commissioner's 22 August 1975 order.

**[3]** According to G.S. 58-248, "[t]he Commissioner shall approve proposed changes in rates, classifications or classification assignments to the extent necessary to produce rates, classifications or classification assignments which are reasonable, adequate, not unfairly discriminatory, and in the public interest." In addition, the Commissioner is vested with authority to revise rates or classifications, charged or filed, which are found to be excessive, unreasonable, unfairly discriminatory, etc., to the extent necessary "to produce rates, classifications, classification assignments which are reasonable, adequate, not unfairly discriminatory, and in the public interest." G.S. 58-248.1. It is clear that G.S. 58-248.1 does not permit the Commissioner to ignore the function of the Rate Office and encroach upon its authority to propose rates. Chapter 58 grants the Commissioner broad regulatory and supervisory powers for overseeing the faithful execution of the insurance laws of this

State. In *Comr. of Insurance v. Automobile Rate Office,* 287 N.C. 192, 214 S.E. 2d 98 (1975), the scope of the Commissioner's authority under G.S. 58-248.1 was explained at length:

"When G.S. 58-248.1 is construed *in pari materia* with the other provisions of Chapter 58, we think the legislative grant of authority to the Commissioner to order an alteration or revision in the rates charged or filed presupposes the failure of the Rate Office to perform its rate-making duties faithfully. Before the Commissioner can order, 'to the extent stated in such order,' a rate alteration or revision under G.S. 58-248.1, he must first make a determination that the rates charged or filed are excessive, inadequate, unreasonable, unfairly discriminatory or otherwise not in the public interest. In reaching that determination he 'shall give consideration to past and prospective loss experience, including the loss-trend and other relevant factors developed from the latest statistical data available; to such relevant economic data from reliable indexes which demonstrate the trend of costs relating to the line of automobile insurance for which rates are being considered and to such other reasonable and related factors as are relevant to the inquiry.' G.S. 58-248. . . .

"In the application of these standards, '[p]roposed rates shall not be deemed unreasonable, inadequate, unfairly discriminatory or not in the public interest, if such proposed rates make adequate provision for premium rates for the future which will provide for anticipated loss and loss adjustment expenses, anticipated expenses attributable to the selling and servicing of the line of insurance involved and a provision for a fair and reasonable underwriting profit.' G.S. 58-248; *In re Filing by Automobile Rate Office,* 278 N.C. 302, 180 S.E. 2d 155 (1971). When existing or proposed rates provide for these expenses and for a *fair and reasonable profit,* and no more, the Commissioner has no authority to order alteration or revision of rates under G.S. 58-248.1." *Comr. of Insurance v. Automobile Rate Office, id.*

[4]   In our opinion the Commissioner's authority to approve or disapprove rates pursuant to G.S. 58-248 is no greater than his authority to revise improper rates or classifications according to G.S. 58-248.1. Both sections require the Commissioner to

approve, disapprove, or revise rates or classifications to the extent necessary to produce rates or classifications which are "reasonable, adequate, not unfairly discriminatory, and in the public interest." The standards for approving or disapproving rates and revising improper rates or classifications are essentially the same, and the authority granted the Commissioner by each section is likewise the same. The only noticeable difference between the two sections is that G.S. 58-248 governs exclusively the approval or disapproval of proposed rates and classifications filed by the Rate Office, whereas G.S. 58-248.1 authorizes the Commissioner to revise improper rates and classifications, presently charged or filed, on his own motion.

[5]   Whether the Commissioner acts pursuant to G.S. 58-248 or G.S. 58-248.1 to review a rate proposal filed by the Rate Office, it is incumbent upon the Commissioner to approve, disapprove, or revise the proposed rates to the extent necessary "to produce rates, classifications or classification assignments which are reasonable, adequate, not unfairly discriminatory, and in the public interest." General Statute 58-248 imposes a mandatory duty upon the Commissioner to act according to this standard in response to a filing by the Rate Office, and G.S. 58-248.1 necessarily incorporates this duty with respect to revisions of Rate Office proposals pursuant to G.S. 58-248.1. Furthermore, whether the Commissioner elects to approve or disapprove pursuant to G.S. 58-248 or revise a proposal pursuant to G.S. 58-248.1, his action must be supported by substantial evidence and comprehensive findings of fact therefrom which comply with the standard prescribed by G.S. 58-248 and quoted above.

[6]   The Commissioner's disapproval of the Rate Office's 1975 filing, as modified, is based on the following, which are denominated "findings of fact":

"16. The motorcycle liability insurance rates contained in the July 15, 1975 proposal of the Rate Office as amended by its July 29, 1975 proposal are excessive.

"17. The classification system for motorcycle liability insurance set forth in said proposals is unfairly discriminatory by reason of the following:

"A. The use of motorcycles differs significantly from the use of private passenger automobiles.

"B. The loss experience for motorcycle liability insurance differs significantly from the loss experience for private passenger automobile liability insurance."

The foregoing are not findings of fact, but are bare assertions by the Commissioner which are not supported by substantial evidence. The findings with respect to the proposed classification system are inadequate for the same reasons.

The Commissioner is provided with adequate staff, expertise, and authority to gather and analyze statistical information. If the Commissioner has reason to believe that a filing by the Rate Office does not comply with statutory standards, he should introduce substantial evidence to support his findings, modifying or rejecting the filing.

In this case the Commissioner's order is not supported by substantial evidence or necessary findings of fact.

Reversed and remanded.

Judge VAUGHN concurs.

Judge MARTIN dissents.