488 A.2d 942

The JOHNS HOPKINS HOSPITAL, INC. and Francis Scott Key Medical Center

v.

INSURANCE COMMISSIONER of the State of Maryland et al.

NORTH CHARLES GENERAL HOSPITAL et al.

v.

INSURANCE COMMISSIONER of the State of Maryland et al.

Nos. 113, 118, September Term, 1984.

Court of Appeals of Maryland.

March 5, 1985.

Francis B. Burch, Jr., Baltimore (Edward O. Clarke, Jr. and Piper & Marbury, Baltimore, on the brief), for appellant University of Maryland Medical System Corp.

Benjamin Rosenberg, Baltimore (Robert A. Shelton, Thomas F. O'Neil, III and Venable, Baetjer & Howard, Baltimore, on the brief), for appellants Johns Hopkins Hosp., Inc. and Francis Scott Key Medical Center, Inc.

Emanuel H. Horn, William J. Rubin and Horn, Dressel & Bennett, P.A., Baltimore, for appellant North Charles Gen. Hosp., Inc.

Richard G. McAlee, Gordon, Feinblatt, Rothman, Hoffberger & Hollander, Baltimore, for appellant Sinai Hosp. of Baltimore, Inc.

David C. Daneker and Constable, Alexander, Daneker & Skeen, Baltimore, for appellants Lutheran Hosp. of Maryland, Inc. and Provident Hosp., Inc.

Benjamin L. Brown, City Sol. for Baltimore and Anthony J. Trotta, Asst. City Sol., Baltimore, for appellant Mayor and City Council of Baltimore.

Diana G. Motz, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Kathleen M. Sweeney and Lynn Goldman Mathias, Asst. Attys. Gen., Baltimore, on the brief), for appellee Ins. Com'r of Maryland.

John A. Picciotto, Towson, for appellee Blue Cross of Maryland.

Argued before MURPHY, C.J., SMITH, ELDRIDGE, COLE and RODOWSKY, JJ., CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals (retired) and WILLIAM H. ADKINS, II, Associate Judge of the Court of Special Appeals, Specially Assigned.

SMITH, Judge.

We shall here hold that the Insurance Commissioner properly approved an insurance plan submitted by appellee Blue Cross of Maryland, Inc.

On April 16, 1984, Blue Cross submitted a new provider contract to the Commissioner for his approval in compliance with Maryland Code (1957, 1979 Repl.Vol., 1983 Cum.Supp.) Art. 48A, § 356. This section requires approval by the Commissioner of such contracts prior to their implementation. On May 7, 1984, a subscriber insurance contract was similarly submitted. These contracts, designed to encourage subscribers to use "low-cost" hospitals, collectively became known as "SelectCare." Although not required by statute to hold public hearings, the Commissioner did conduct public hearings on May 29. Certain hospitals testified in opposition. A great quantity of evidence was before the Commissioner. On June 27 the Commissioner approved SelectCare, with modifications favorable to the hospitals, to

become effective on July 2. On July 3 Blue Cross submitted revised contracts which the Commissioner approved on July 5.

A number of hospitals and the Mayor and City Council of Baltimore appealed to the Circuit Court for Baltimore City.[1] The trial judge (Ross, J.) issued a comprehensive and well-reasoned opinion in which he affirmed the Commissioner's order.

Appellants here, seven of the hospitals and the Mayor and City Council of Baltimore, appealed to the Court of Special Appeals. We granted their petition for issuance of a writ of certiorari prior to hearing in the intermediate appellate court. We consolidated the pending appeals and, at the request of the hospitals, issued a stay of the Commissioner's order during the pendency of the appeal in this case.

SelectCare is an attempt by Blue Cross to reduce the cost of health care insurance to its subscribers. Appellants in their brief say, "The cornerstone of SelectCare ... is the exclusion by Blue Cross of certain so-called 'high-cost' hospitals. Only those institutions designated by Blue Cross as 'low-cost' hospitals would be eligible to participate in the SelectCare plan. The appellant hospitals have all been excluded from the SelectCare program." The trial judge summarized the program in his opinion:

"The Blue Cross provider agreement allows any hospital with case-mix adjusted average charges per admission to Blue Cross patients less than 110% of the statewide average to qualify as a low-cost hospital and thus be eligible for the SelectCare program. Using this eligibility threshold, ten hospitals in Maryland would be excluded as providers in the SelectCare program, because they are

---

1. The concern of Baltimore City, as expressed by the trial judge, "is that because a large number of the high-cost hospitals are located in areas of the City populated by minorities and the economically disadvantaged there is the risk that these groups will be deprived of adequate health care services."

high-cost hospitals. Eight of these ten health care facilities are located in Baltimore City.

"The approved Blue Cross subscriber agreement provides incentive for subscribers to use the low-cost hospital for routine non-emergency inpatient care by providing full coverage for care in these hospitals. If the subscriber chooses a high-cost hospital for routine inpatient care, he must pay a deductible that is limited to $1500 per admission and subject to an annual maximum of $3000. Emergency care, specified specialty care and outpatient care are not subject to these limits and will be paid in full by Blue Cross when obtained from any hospital."

At the time here relevant, nonprofit health service plans such as that of Blue Cross were covered by Code (1957, 1979 Repl.Vol., 1983 Cum.Supp.) Art. 48A, §§ 354–361F. Section 356 provided in relevant part:

"No corporation subject to the provisions of this subtitle shall amend ... the terms and provisions of contracts executed or to be executed with hospitals ... and the terms and provisions of contracts issued, or proposed to be issued, to subscribers of the plan, until such proposed amendments have first been submitted to, and approved by, the Insurance Commissioner ...."

A filing is deemed approved unless explicitly disapproved by the Commissioner within a 45-day waiting period or an extension thereof. The Commissioner's duty is spelled out:

"The Commissioner shall disapprove or modify the proposed change or changes if the table of rates appears by reasonable assumptions to be excessive in relation to benefits, or if the form contains provisions which are unjust, unfair, inequitable, inadequate, misleading, deceptive, or encourage misrepresentations of the coverage. In determining whether to disapprove or modify the form or table of rates, the Commissioner shall give due consideration to past and prospective loss experience within and outside this State, to underwriting practice and judgment to the extent appropriate, to a reasonable margin for reserve needs, to past and prospective expenses both

countrywide and those specifically applicable to this State, and to all other relevant factors within and outside this State."

Section 361B provides for an appeal from any decision and finding of the Commissioner "in accordance with the provisions of § 242B of [Article 48A]." The latter section states that orders or decisions of the Commissioner shall be subject to review by appeal to the Circuit Court for Baltimore City. That court is to reverse or modify the Commissioner's order or decision in whole or in part if it finds that the order or decision "is not supported by the preponderance of the evidence on consideration of the record as a whole, or is not in accordance with law . . . ." In *Insurance Comm'r v. Blue Shield*, 295 Md. 496, 524–25, 456 A.2d 914, 929 (1983), Judge Rodowsky said for the Court, "[T]his conferral of the right of appeal is constrained by the general principle of administrative law that the person invoking the administrative appeal procedure must in some way have been a party in the proceedings leading to the challenged agency action." The appellant hospitals here were involved before the Insurance Commissioner. Section 242B provides for further appeal to the Court of Special Appeals "from the decision of the Circuit Court for Baltimore City as in other civil cases." It states that the Commissioner shall be made a party to every appeal of this nature.

The appellants make a number of contentions. They argue: the Commissioner's approval of SelectCare unlawfully conflicts with the system of health care regulation enacted by the General Assembly and administered by the Health Services Cost Review Commission and the Maryland Health Services Planning Commission. They point out that the Health Services Cost Review Commission was established to assure each purchaser of hospital services that the total costs of the hospital are reasonably related to the total services offered by the hospital, that the hospital's aggregate rates are reasonably related to the hospital's aggregate costs, and that the rates are set equitably among

all purchasers of services without undue discrimination. Code (1982, 1983 Cum.Supp.) § 19–210(5), Health-General Article. A hospital may charge patients only at rates set by the Health Services Cost Review Commission. Code (1982) § 19–216(b)(2), Health-General Article. The Health Resources Planning Commission administers the State certificate of need program. Code (1982, 1983 Cum.Supp.) § 19–101 et seq., Health-General Article. They insist that when the Commissioner approved this SelectCare insurance program he infringed upon the rights and duties of these two agencies. They assert that SelectCare is the latest in a series of attempts by Blue Cross to avoid paying its share of the bad debts and charity care which are included in the appellant hospitals' rates set by the Health Services Cost Review Commission.[2] They point out that the Health Services Cost Review Commission uses a "market basket" methodology in comparing rates of hospitals. See the discussion in *P.G. Doctors' Hosp. v. HSCR Comm'n,* 302 Md. 193, 207–09, 486 A.2d 744, 751–53 (1985). In this case a standard based on the average charges of all hospitals in the State was used in determining high cost hospitals. It is asserted that the standard of comparison used is unfair and inconsistent with that of the Health Services Cost Review Commission. An argument is also made that the Commissioner lacked power to approve SelectCare because SelectCare is inconsistent with what the appellants see as the public purposes of nonprofit health service plans. It is argued that the lower court applied the wrong standard of review, "a deferential standard of review which, under [Code (1957, 1979 Repl. Vol., 1982 Cum.Supp.) Art. 48A,] § 242B(2), is applicable only to factual findings made by the Commissioner." They finally argue that the manifest inequity of SelectCare required the Commissioner to disapprove the contracts.

---

**2.** Blue Cross vehemently denies this allegation. It points out that under the Health Services Cost Review Commission scheme an allowance for bad debts and charity care is a factor in all hospital rates and that the percentage of bad debts being paid by Blue Cross is many times that created by its members.

We have recently set forth the bases for review of actions by an administrative agency in *P.G. Doctors' Hosp. v. HSCR Comm'n,* 302 Md. 193, 200–02, 486 A.2d 744, 747–48 (1985). We referred in that case to, among others, *Insurance Comm'r v. Nat'l Bureau,* 248 Md. 292, 236 A.2d 282 (1967), a case involving legislative action by the Insurance Commissioner. In that case Chief Judge Hammond said for the Court:

"Whichever of the recognized tests the court uses—substantiality of the evidence on the record as a whole, clearly erroneous, fairly debatable or against the weight or preponderance of the evidence on the entire record—its appraisal or evaluation must be of the agency's fact-finding results and not an independent original estimate of or decision on the evidence. The required process is difficult to precisely articulate but it is plain that it requires restrained and disciplined judicial judgment so as not to interfere with the agency's factual conclusions under any of the tests, all of which are similar. There are differences but they are slight and under any of the standards the judicial review essentially should be limited to whether a reasoning mind reasonably could have reached the factual conclusion the agency reached. This need not and must not be either judicial fact-finding or a substitution of judicial judgment for agency judgment. See 4 Davis, op. cit. §§ 29.01, 29.02, 29.03, 29.06, 29.07, 29.10; 2 Cooper, op. cit. Ch. XIX, § 7; 2 Am.Jur.2d *Administrative Law* §§ 616, 620, 621, 659, 661; the majority and concurring opinions in *NLRB v. Southland Mfg. Co.,* 201 F.2d 244; *Board of Oak Hill Farms* [232 Md. 274, 192 A.2d 761] and *Board v. Levitt & Sons* [235 Md. 151, 200 A.2d 670], both *supra.*

"We hold that a court in reviewing legislative actions or decisions of an administrative agency may apply the weight of the evidence test to the factual findings of the agency, without exercising nonjudicial functions, provided it does not itself make independent findings of fact or substitute its judgment for that of the agency. Section 245 of Art. 48A, properly construed, does no more than

permissibly require the court to decide (1) the legality of the Insurance Commissioner's actions, and (2) whether a reasoning mind reasonably could have determined that the factual conclusion reached was proven by the weight of the evidence on the record as a whole." 248 Md. at 309–10, 236 A.2d at 291–92.

We do not see the action of the Commissioner in approving these proposed insurance contracts as infringing upon the duties and responsibilities of other agencies. On this subject the trial judge said:

"In today's complex society it is not possible, nor is it desirable, so to limit the area of concern of one administrative agency that it does not touch upon that of other agencies. It is not only appropriate but in many instances necessary, in pursuing state policy goals that two or more agencies of State government take action within the ambit of their express powers to accomplish the desired objective. See *Equitable Life Assurance Society v. State Commission on Human Relations,* 290 Md. 333 [, 430 A.2d 60] (1981); cf. *State Commissioner of Insurance v. North Carolina Rate Administrative Office* [, 30 N.C.App. 477], 227 S.E.2d 621 (1976). Certainly, if health care cost containment is State policy, such would be among the 'relevant factors' which the Commissioner is enjoined by § 356 to consider. See *Blue Cross and Blue Shield of Michigan v. Demlow* [, 403 Mich. 399], 270 N.W.2d 845 (1978).

*       *       *       *       *       *

"To state the obvious the Commissioner's orders do not approve or disapprove health care facility rates nor do they approve or disapprove an application for certificate of need. The former is within the exclusive domain of the HSCRC and the latter, of the HRPC. The decisions of the Commissioner do not include any specific act for which authority is given to either HRPC or HSCRC. His decisions are limited to that which he is directed to do by § 356 which is to approve (or disapprove) amendments to provider and subscriber contracts submitted by nonprofit

health service plans, a power delegated to neither HRPC or HSCRC. The Commissioner has not exceeded the scope of his authority nor has he attempted to exercise power and authority delegated to other agencies. In light of the limited judicial role, coordination of the efforts of separate State agencies in seeking to achieve common goals is beyond the responsibility, authority and power of the Court."

We agree. We fear that the appellants have lost sight of the holding of this Court in *Baltimore Co. Hosp. v. Md. Hosp.*, 234 Md. 427, 200 A.2d 39 (1964), that Blue Cross as a private corporation selling hospitalization insurance generally has the right to select hospitals which it accepts as members.

We see this case as simply one involving review of the action of an administrative agency. It was nothing more nor less than the approval by the Commissioner, with modifications favorable to the hospitals, of a form of insurance contract. It will be remembered that the mandate of Art. 48A, § 356 to the Commissioner is that he is to approve a proposal by an organization such as Blue Cross unless he finds that "the table of rates appears by reasonable assumptions to be excessive in relation to benefits" or that "the form contains provisions which are unjust, unfair, inequitable, inadequate, misleading, deceptive, or encourage misrepresentations of the coverage." As we see it, in determining whether he will approve or disapprove a proposal, the Commissioner is to focus his attention on any such proposal as it relates to those who are to be insured under the plan. The Commissioner acted within the scope of § 356. We think a reasoning mind reasonably could have reached the factual conclusions the Commissioner reached and his approval of the proposed program was "in accordance with law ...."

JUDGMENT AFFIRMED; APPELLANTS TO PAY THE COSTS.