585 A.2d 269

**Ronald LUBMAN, et al.**

v.

**INSURANCE COMMISSIONER OF the STATE of Maryland.**

**No. 592, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Feb. 5, 1991.

Joseph S. Kaufman (Fedder & Garten, P.A., on the brief), Baltimore, for appellants.

Meg L. Rosthal, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellee Ins. Com'r.

John A. Picciotto (Philip V. Tamburello, on the brief), Owings Mills, for appellee Blue Cross and Blue Shield.

Argued before BISHOP, ROSALYN B. BELL and CATHELL, JJ.

ROSALYN B. BELL, Judge.

This case involves a proposed contract submitted to the Insurance Commissioner of the State of Maryland by Blue Cross Blue Shield of Maryland (Blue Cross), which would govern the payment of claims to independent pharmacists who participate in Blue Cross's prescription drug program. The proposed contract requires independent pharmacists to pay a "provider discount" to Maryland Medical Services, Inc. (MMS), a wholly owned for-profit subsidiary of Blue Cross. Appellee, the Insurance Commissioner (Commissioner), modified and approved the proposed contract. Appellants, a group of independent pharmacists and the Maryland Pharmacists Association, appealed this decision to the Circuit Court for Baltimore City. The circuit court affirmed this decision. Appellants then filed this appeal in which the following issues are raised:

— Did the Commissioner err in determining that the proposed contract, as modified, is fair, reasonable, adequate and in conformity with Md.Code Ann. Art. 48A, § 356 (1957, 1986 Repl.Vol.)?

— Is the proposed contract discriminatory with respect to independent pharmacists?

— May Blue Cross, as a nonprofit health service plan, own a for-profit subsidiary?

— Is the "provider discount" an illegal kick-back or rebate to Blue Cross or its subsidiary?

## FACTS

On May 31, 1989, Blue Cross submitted a contract to the Commissioner for approval which would amend the formula for reimbursing independent pharmacists who participate in Blue Cross's prescription drug program. The proposed contract provided that participating pharmacists would be reimbursed for the average wholesale price of the pharmaceutical product or ingredient, plus a dispensing fee of $3.30 for each prescription filled, less a "provider discount" of 30¢[1] per claim to be returned to MMS.

On June 26, 1989, the Commissioner held a quasi-legislative hearing. Appellants appeared through counsel and testimony was received from five independent pharmacists and an expert in pharmacy management. David A. Banta, Director of Pharmacy Relations for Blue Cross, testified on behalf of Blue Cross.

Independent pharmacist Ronald Lubman testified that he would lose between $2,500 and $3,200 in profit under the proposed contract as compared to the old contract. The other pharmacists testified that they would lose between $2,300 and $3,000 in profit per store under the proposed contract.

D.C. Huffman, appellants' expert witness, testified that a dispensing fee of $5.36 plus the cost of the drug product should be paid to pharmacists to enable them to meet expenses and receive an equitable return on investment. Huffman also testified that the cost to dispense prescription drugs has followed the consumer price index. He stated that, if the consumer price index were applied to the $3.30 dispensing fee established in 1983, the dispensing fee would have risen to $4.20 by 1989.

Appellants also submitted into evidence a 1985 study conducted by Myers and Stauffer, certified public accountants, for use by the State of Maryland in its Medicaid

---

1. The contract originally required a 50¢ provider discount. Blue Cross later reduced the provider discount to 30¢.

program. The study concluded that the mean cost to dispense a prescription in Maryland in 1985 was $4.11, exclusive of ingredient costs and before profit.

Banta, on behalf of Blue Cross, testified that the existing contract, approved in 1983, provides that pharmacists are to be reimbursed for the actual acquisition costs of the drug, plus a dispensing fee of $3.30 for each prescription order filled, less any deductible payable by the insured. He stated that the actual acquisition cost is very difficult to determine, but the average wholesale price is a published figure and easily determined. Therefore, while the existing contract called for payment of the actual acquisition cost, Blue Cross has reimbursed pharmacists for the average wholesale price, or for submitted charges, whichever is less.

Banta explained that what a pharmacist makes when reimbursed by Blue Cross consists of two elements. The first element is the dispensing fee, which is designed to cover overhead. The second element is the difference between the actual acquisition cost and the average wholesale price.

Banta testified that the actual acquisition cost is between seven percent and 12 percent below the average wholesale price. He stated that high volume pharmacies, with greater purchasing power, are able to obtain pharmaceutical products at the best price. This maximizes the difference between the actual acquisition cost and the average wholesale price. He also stated that the 30¢ proposed provider discount equals approximately two percent of the average wholesale price.

He stated that, as the cost of prescription drugs has risen, coupled with inflationary increases in the average wholesale price, the total dollar amount of difference between the actual acquisition cost and the average wholesale price has increased. This provides pharmacists a greater return on investment and a hedge against inflation.

Banta further testified that the funds generated by the provider discount would be used by MMS. MMS would

examine changes in the prescription drug program. These changes would include a pharmacy advisory committee, patient education projects, drug utilization review, modification of the generic drug program, and other changes designed to reduce costs and enhance the quality of care provided to patients.

Banta also testified regarding contracts with chain pharmacies. He stated that negotiations with the chain pharmacies were continuing. He also stated that the provider discounts sought by Blue Cross from chain pharmacies were significantly larger than the provider discount sought from independent pharmacists.

Based on this testimony, the Commissioner's hearing officer determined that the proposed contract, with a reimbursement formula of the average wholesale price of the drug plus a $3.30 dispensing fee less a 30¢ provider discount, was not fair, reasonable or adequate. Therefore, the hearing officer found that the proposed contract violates the standards set forth in Art. 48A, § 356. The hearing officer, however, found that, if the provider discount were reduced to 15¢ per claim, the proposed contract would meet the standards set forth in Art. 48A, § 356.

This conclusion was based on the following findings. The hearing officer found

"that in 1983 the Insurance Division approved a dispensing fee of $3.30 plus AAC [actual acquisition cost] as fair, reasonable and adequate compensation to an independent pharmacy and in conformity with the standards established in Art. 48A, § 356."

The hearing officer accepted appellants' expert witness' testimony that, if the consumer price index from 1983 to 1989 were applied to the dispensing fee, the dispensing fee would increase to $4.20. Therefore, a reimbursement formula of the actual acquisition cost of the drug plus a dispensing fee of $4.20 would be comparable to the 1983 contract and in conformity with Art. 48A, § 356. The hearing officer further concluded that independent pharma-

cists can purchase drugs for approximately seven percent less than the average wholesale price. Based on the evidence presented, the hearing officer concluded that the mean average wholesale price is $15.00. Seven percent of $15.00 is $1.05. Thus, he concluded that the pharmacists were receiving an additional $1.05 by receiving the average wholesale price rather than the actual acquisition cost of the drug.

The hearing officer calculated that the $3.30 dispensing fee less a 30¢ provider discount plus $1.05 would yield pharmacists $4.05 over and above the ingredient costs for each prescription filled. The hearing officer concluded that this was not sufficient reimbursement. The hearing officer, however, found that, if the provider discount were reduced to 15¢ per claim, pharmacists would receive, essentially, $4.20 plus the actual acquisition cost of the drug. This reimbursement would be fair, reasonable, adequate and in conformity with the standards set forth in Art. 48A, § 356. Therefore, the hearing officer modified the contract to impose a 15¢ provider discount and approved the contract as modified.

Appellants appealed to the Circuit Court for Baltimore City. That court affirmed the Commissioner, finding that the decision was supported by substantial evidence and was reasonably decided.

Appellants then appealed to this Court. We shall reverse the judgment of the circuit court. We explain.

### DOES THE CONTRACT CONFORM TO ART. 48A, § 356?

Appellants argue, essentially, that the Commissioner erred in determining that the contract, as modified, meets the requirements of Art. 48A, § 356.[2] Article 48A, § 356

---

**2.** The actual questions presented by appellants are as follows:

— Are independent pharmacists required to subsidize costs of administration based on the evidence presented?

requires that any proposed changes to a contract between a nonprofit health service plan and health care providers must be submitted to and approved by the Commissioner. The Commissioner must disapprove the proposed changes if they are unjust, unfair, inequitable or inadequate. Art. 48A, § 356(a).

Pursuant to Md.Code Ann. Art. 48A, § 361B (1957, 1986 Repl.Vol.), the decision of the Commissioner to approve, disapprove or modify a proposed contract is subject to judicial review in accordance with the provisions of Md.Code Ann. Art. 48A, § 242B (1957, 1986 Repl.Vol.). Section 242B(2) provides in pertinent part:

> "The Circuit Court for Baltimore City shall hear and decide the appeal within 60 days after the date of the filing of the notice of appeal, and shall affirm, reverse or modify the Commissioner's order or decision appealed from.

> "If the Circuit Court for Baltimore City finds that the Commissioner's order or decision is not supported by the preponderance of the evidence on consideration of the record as a whole, or is not in accordance with law, the court shall reverse or modify the Commissioner's order or decision in whole or in part.

> "An appeal to the Court of Special Appeals may be taken from the decision of the Circuit Court for Baltimore City as in other civil cases. The Commissioner shall be made a party to every appeal of this nature."

The scope of judicial review under § 242B is narrow. *Maryland Fire Underwriters Rating Bureau v. Insurance Commissioner*, 260 Md. 258, 263–64, 272 A.2d 24 (1971). We must determine whether the Commissioner reached a factual conclusion on the basis of a preponderance of the

---

— Is average wholesale price the proper standard of reimbursement by Blue Cross?
— Are appellants entitled to earn a profit?
In essence, each of these questions asks whether the contract, as modified, is fair, just, equitable and adequate.

evidence. *Insurance Commissioner v. National Bureau of Casualty Underwriters*, 248 Md. 292, 305, 236 A.2d 282 (1967). The statutory standard imposed is whether the Commissioner's determinations "could reasonably have been made by a reasoning mind using the preponderance of the evidence test." *National Bureau of Casualty Underwriters*, 248 Md. at 305, 236 A.2d 282.

Appellants argue that, even under this narrow scope of review, the Commissioner's decision should be reversed. We agree. The Commissioner found that the 1983 contract had been approved. Based on this approval, he presumed that the 1983 contract was just, fair, equitable and adequate. These determinations were central to the Commissioner's ultimate decision.

As noted previously, the Commissioner adjusted the 1983 dispensing fee using the consumer price index. He then calculated the additional income to pharmacists generated by using the average wholesale price rather than the actual acquisition cost. The Commissioner concluded that a reimbursement formula of the average wholesale price plus a $3.30 dispensing fee less a 15¢ provider discount was comparable to the 1983 contract. Therefore, the proposed contract, as modified, was just, fair, equitable and adequate.

While this method may seem reasonable at first blush, there is a fatal flaw. There was no evidence in the record that the 1983 contract had ever been approved. The Commissioner had no basis upon which to conclude summarily that the 1983 contract met the requirements of Art. 48A, § 356. Therefore, the conclusion that the proposed contract was just, fair, equitable, and adequate because it was comparable to the 1983 contract is not supported by the evidence.

Blue Cross argues that, because Art. 48A, § 356 requires that the contract be approved by the Commissioner and because the contract had been in use since 1983, the contract must have been approved. This argument assumes too much. The required procedures may well have been

circumvented in 1983. It is unreasonable to assume that the 1983 contract had been approved when the record is devoid of any such proof. Therefore, we hold that the Commissioner's decision could not "reasonably have been made by a reasoning mind using the preponderance of the evidence test." *National Bureau of Casualty Underwriters*, 248 Md. at 305, 236 A.2d 282.

Because we are reversing this case and remanding it to the Commissioner, we need not address the other issues presented by appellants. Nevertheless, we suggest the Commissioner may wish to consider and decide those issues. If he has not already done so, the Commissioner may wish to decide whether Blue Cross may or should own a for-profit subsidiary which will be funded by revenues of the not-for-profit corporation; whether the provider discount is an illegal kickback or rebate; and whether the proposed contract is discriminatory with respect to independent pharmacists.

The Insurance Commissioner may want to consider whether the proposed contract creates a reimbursement scheme that is ripe for abuse. Appellants point out that the revenue created from the provider discount would be paid to an unregulated for-profit subsidiary of Blue Cross. The Commissioner may wish to determine whether this revenue will be used for a proper purpose. On the one hand, the activities of the for-profit subsidiary may indeed have the altruistic purpose of benefitting all Blue Cross subscribers. Without regulation, however, the Commissioner may be unable to ensure that this revenue is utilized in a legal and appropriate manner.

Moreover, because the provider discount would be paid to a for-profit subsidiary, this revenue might not be taken into account in other rate-making cases. Thus, the Commissioner may not be aware of Blue Cross's true financial situation in determining reimbursement rates for other health care providers or premium rates for subscribers. For example, if the proposed contract were approved, Blue Cross could, at a later date, claim that it is unable to meet its expenses

in providing health care with the current premiums paid by subscribers. The Commissioner, without information concerning the revenue generated by the provider discount, could increase the premiums for subscribers. Essentially, subscribers would be forced to pay higher premiums needlessly when Blue Cross, in fact, has sufficient funds to provide health care without an increase in premiums.

We make no comment on whether the proposed contract would meet the requirements of Art. 48A, § 356 if Blue Cross had requested that the dispensing fee be decreased to $3.15. That question is not before us.

In view of the reasons stated, we shall reverse the decision of the Commissioner and remand this case for further consideration in accordance with this opinion.

JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY WITH INSTRUCTIONS TO REMAND TO THE INSURANCE COMMISSIONER OF THE STATE OF MARYLAND. COSTS TO BE PAID BY APPELLEE.