652 A.2d 125

Phillip WEINER, et al.

v.

MARYLAND INSURANCE ADMINISTRATION et al.

No. 47, Sept. Term, 1994.

Court of Appeals of Maryland.

Jan. 19, 1995.

Joseph S. Kaufman, argued by Howard J. Schulman, Baltimore, for appellant.

Christina Gerstung Beusch, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Dennis W. Carroll, Asst. Atty. Gen., on brief), argued by Edwin R. Goodlander, Baltimore, for appellee Blue Cross & Blue Shield of Maryland.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, KARWACKI, BELL and RAKER, JJ., and JOHN J. GARRITY,* Judge of the Court of Special Appeals of Maryland, Specially Assigned.

KARWACKI, Judge.

In December, 1992, Blue Cross and Blue Shield of Maryland (BCBSM), a non-profit health service plan as defined by Maryland Code (1957, 1994 Repl.Vol.)[1], Art. 48A, § 354, filed a form of contract with the Maryland Insurance Administration (MIA) for approval pursuant to Art. 48A, § 356.[2] This form is a proposed contract between BCBSM and voluntarily participating pharmacies providing, *inter alia*, a new formula[3] for reimbursement to pharmacies for filling prescriptions for members of BCBSM's prescription drug plans. The form was approved by MIA on March 12, 1993 without holding a hearing. On March 31, 1993, a number of individual pharmacists and the Maryland Pharmacists Association[4] (the Pharmacists), requested a hearing, complaining, *inter alia*, about the new reimbursement formula.[5]

---

* Garrity, J., now retired, participated in the hearing and conference of this case; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. All further references to Article 48A will be to this edition of the Maryland Code unless otherwise specified.

2. This statute requires non-profit health services plans, such as BCBSM, to submit proposed rates, contracts and forms to MIA for approval before they are put into use by the plan.

3. The proposed formula is the Average Wholesale Price (AWP) minus 10% plus $3.00.

4. The Maryland Pharmacists Association is a voluntary association of pharmacists with no authority to collectively represent its members.

5. The group also complained of a "most favored nation" clause in the new contract that assured BCBSM of a reduction in its reimbursement rate whenever participating pharmacists agreed to a lower reimbursement rate with any other entity with which the participating pharmacists had an agreement "for the types of services provided herein." As

On May 11, 1993, Donald Brandenberg, an Associate Insurance Commissioner, held a hearing in response to the Pharmacists' request, to determine whether the contract form should be approved. Mr. Brandenberg began, over objections from the Pharmacists, by characterizing the proceeding as "an informational hearing," and inviting all present, on both sides of the dispute, to speak. Counsel for the Insurance Commissioner explained why the matter was not a quasi-judicial proceeding, necessitating an adjudicatory hearing. All who wished to speak were allowed to do so, and the Associate Commissioner reviewed numerous documents submitted into the record. On July 12, 1993, the Associate Commissioner issued an order approving a modified version [6] of the contract form, concluding that there was no basis on which to disapprove it.[7]

The Pharmacists sought judicial review of the Associate Commissioner's decision in the Circuit Court for Baltimore City, and BCBSM successfully moved to intervene. Judicial review of the decision was conducted on the record. Following a hearing on January 3, 1994, the court issued an order affirming the Associate Commissioner's decision. The Pharmacists appealed that judgment to the Court of Special Appeals. Prior to any consideration of the case by the intermediate appellate court, we issued a writ of certiorari on our own motion to consider the four issues raised by the appellants: (1) whether appellants should have been granted an adjudicatory hearing on their complaints before the Associate Insurance Commissioner; (2) whether the Associate Insurance Commissioner improperly shifted the burden of proof onto the appellants; (3) whether the Associate Insurance Commissioner's approval of the proposed contract form was supported by the

---

a result of the hearing, this clause was removed, and that action was not appealed by BCBSM.

**6.** *See supra* note 4.

**7.** The Associate Commissioner expressly rejected the pharmacists' argument that the reimbursement formula was unfair to *them*.

evidence before him; and (4) whether we should consider the for-profit status of a BCBSM subsidiary. 335 Md. 341, 643 A.2d 441. We shall hold that the appellants were not entitled to an adjudicatory hearing. In light of that holding, we need not address the second and third questions presented. We will not consider appellants' fourth issue, as we find nothing in the record to indicate that it was raised at the hearing before the Associate Commissioner; therefore, the issue was not preserved for judicial review. *E.g., Mayor and City Council of Ocean City v. Taber,* 279 Md. 115, 126, 367 A.2d 1233, 1239 (1977). Therefore, we shall affirm the judgment of the Circuit Court for Baltimore City.

The Pharmacists contend that they were entitled to an adjudicatory or quasi-judicial hearing before the Associate Insurance Commissioner with all the rights which attach to such a hearing, such as the right to cross examine witnesses. They claim that the informational or quasi-legislative hearing which they were afforded was insufficient.

█ It is well settled that a party is entitled to a quasi-judicial hearing before an administrative agency only if that type of hearing is required by statute or regulation or mandated by constitutional due process concerns. *Sugarloaf Citizens Ass'n v. Northeast Md. Waste Disposal Auth.,* 323 Md. 641, 652, 594 A.2d 1115, 1120 (1991). We therefore first turn to the statutory provisions governing administrative hearings.

Article 48A, § 356 requires that the terms and provisions of any contract to be executed by a non-profit health service plan with those who provide health services to the plan's subscribers, be submitted to the Insurance Commissioner for approval. Section 356 provides, in pertinent part:

"(a) *In general.*—No corporation subject to the provisions of this subtitle shall amend its certificate of incorporation, its bylaws, the terms and provisions of contracts executed or to be executed with hospitals, physicians, chiropodists, chiropractors, pharmacists, dentists, psychologists, or optometrists, and the terms and provisions of contracts issued, or proposed to be issued, to subscribers of the plan, until such

proposed amendments have been first submitted to, and approved by, the Insurance Commissioner ... Each amendment shall be on file for a waiting period of 60 working days before it becomes effective.... A filing shall be deemed approved unless disapproved by the Commissioner within the waiting period or any extension thereof. The Commissioner shall disapprove or modify the proposed change or changes if the table of rates appears by statistical analysis and reasonable assumptions to be excessive in relation to benefits, or if the form contains provisions which are unjust, unfair, inequitable, inadequate, misleading, deceptive, or encourage misrepresentations of the coverage. In determining whether to disapprove or modify the form or table of rates, the Commissioner shall give due consideration to past and prospective loss experience within and outside this State, to underwriting practice and judgment to the extent appropriate, to a reasonable margin for reserve needs, to past and prospective expenses both countrywide and those specifically applicable to this State, and to all other relevant factors within and outside this State.

\* \* \* \* \* \*

"(c) *Failure to comply with filing requirements.*—If at any time subsequent to the applicable review period provided for in subsection (a) of this section, the Commissioner finds that a filing does not meet the requirements of this section, the Commissioner shall, after a hearing held upon not less than 10 days' written notice to the filer, specifying the matters to be considered at the hearing, issue an order to the filer specifying in what respects the Commissioner finds that the filing fails to meet the requirements of this section, and stating when, within a reasonable period thereafter, the filing shall be no longer effective...."

Sections 354 through 361H of Art. 48A comprise subtitle 20 of that Article and exclusively govern non-profit health services plans. Section 361B of subtitle 20 at the time of the hearing before the Associate Insurance Commissioner in the instant case provided:

"All decisions and findings of the Commissioner made under the provisions of this subtitle are subject to review by the court in accordance with the provisions of § 242B of this article." [8]

Section 242B of Art. 48A, in pertinent part, provides:

"(1) *Hearing before Commissioner.*—Any insurer or rating organization aggrieved by any order or decision of the Commissioner under this subtitle made without a hearing, may within thirty (30) days after notice of the order to the insurer or organization, make written request to the Commissioner for a hearing thereon.... Within twenty (20) days after the conclusion of such hearing the Commissioner shall affirm, reverse or modify his previous action, specifying his reason therefor, and shall give a copy of such order or decision to all interested parties....

"The order shall contain specific findings of fact by the Commissioner in relation to the matter before him, such findings to be supported by a preponderance of the evidence on consideration of the record as a whole....

\*　\*　\*　\*　\*　\*

"Nothing contained in this subtitle shall require the observance at any hearing of formal rules of pleading or evidence.

"(2) *Judicial review of decisions of Commissioner.*—All orders or decisions of the Commissioner shall be subject to review by appeal to the Circuit Court for Baltimore City.

\*　\*　\*　\*　\*　\*

---

8. Section 361B was amended by ch. 507 of the Acts of 1993. It now provides:
 "(a) *Decisions regarding rates and forms.*—All decisions and findings of the Commissioner regarding rates and forms made under § 356 of this subtitle are subject to review by the court in accordance with the provisions of § 242B of this article.
 "(b) *Other decisions.*—All other decisions and findings of the Commissioner regarding a corporation subject to this subtitle are subject to review by the court in accordance with § 40 of this article."
 The amendment was effective on June 1, 1993.

"If the Circuit Court for Baltimore City finds that the Commissioner's order or decision is not supported by the preponderance of the evidence on consideration of the record as a whole, or is not in accordance with law, the court shall reverse or modify the Commissioner's order or decision in whole or in part."

█ A form of contract to be entered into by a non-profit health plan, such as BCBSM, and a group of providers, such as pharmacists, must be submitted to the Insurance Commissioner for approval. Art. 48A, § 356(a). No hearing of any type is required prior to the Commissioner's approval of the contract. *See Id.* Indeed, an amendment "shall be deemed approved unless disapproved by the Commissioner ...," after the expiration of a 60 day waiting period following the filing. *Id.* In contrast, a hearing is expressly required any time the Commissioner finds, subsequent to approval of a form of contract, that the contract does not meet the requirements of this section. Art. 48A, § 356(c). Additionally, Art. 48A, § 242B(1) provides "[a]ny insurer or rating organization aggrieved by any order or decision of the Commissioner under this subtitle *made without a hearing,* may ... make written request to the Commissioner for a hearing thereon" (emphasis added). Clearly, therefore, no hearing at all is required by Art. 48A, § 356(a). *See Johns Hopkins Hosp. v. Insurance Comm'r,* 302 Md. 411, 413, 488 A.2d 942, 943 (1985) (*"Although not required by* [Art. 48A § 356(a)] *to hold public hearings,* the Commissioner did conduct public hearings ..." (emphasis added)). Furthermore, if the Commissioner issues an order or makes a decision without holding a hearing, Art. 48A, § 242B(1) unambiguously limits the right to request a hearing to an aggrieved insurer or rating organization. The Pharmacists in the instant case do not fall under either category.

█ Moreover, the legislative intent behind the enactment of these provisions must be determined in light of the constraint placed upon the General Assembly by Article 8 of the Declaration of Rights, which provides:

"[t]hat the Legislative, Executive and Judicial powers of Government ought to be forever separate and distinct from each other; and no person exercising the functions of one of said Departments shall assume or discharge the duties of any other."

For that reason we have held that the General Assembly, in providing for judicial review of actions by administrative agencies, may not confer upon the courts the ability to review quasi-legislative decisions by substitution of the court's judgment, as to the wisdom of the administrative action, for that of the agency. *Department of Natural Resources v. Linchester Sand & Gravel Corp.*, 274 Md. 211, 334 A.2d 514 (1975). We there concluded:

"In those instances where an administrative agency is acting in a manner which may be considered legislative in nature (quasi-legislative), the judiciary's scope of review of that particular action is limited to assessing whether the agency was acting within its legal boundaries ...; furthermore, when an agency is acting in a fact-finding capacity (quasi-judicial) the courts review the appealed conclusions by determining whether the contested decision was rendered in an illegal, arbitrary, capricious, oppressive or fraudulent manner. *Storch v. Zoning Bd. of Howard Co.*, 267 Md. 476, 487 (including footnote 2), 298 A.2d 8 (1972); *Crown Central v. City of Baltimore*, 258 Md. 82, 89, 265 A.2d 192 (1970); *M. & C.C. of Balto. v. Biermann*, 187 Md. 514, 523, 50 A.2D 804 (1947); see also *Balto. Import Car v. Md. Port Auth.*, 258 Md. 335, 342, 265 A.2d 866 (1970)."

*Id.* 274 Md. at 224, 334 A.2d at 523. *See also Sugarloaf*, 323 Md. at 672–73, 594 A.2d at 1130 ("administrative policy determinations after 'informational' hearings are not subject to judicial review in the usual sense of that term. Instead, any court review would ordinarily be limited to determining whether the agency acted constitutionally, *Storch v. Zoning Bd. of Howard Co.*, 267 Md. 476, 487, 298 A.2d 8, 14 (1972); *Crown Central v. City of Baltimore*, 258 Md. 82, 89–90, 265 A.2d 192, 196–197 (1970); *M. & C.C. of Balt. v. Biermann*, 187 Md. 514, 523, 50 A.2d 804, 808 (1947); or 'whether the agency

was acting within its legal boundaries,' *Dep't of Nat. Res. v. Linchester, supra* " (citation omitted)).

■ Under Art. 48A, § 356, in determining whether he would approve or disapprove of the price which BCBSM would pay for the drugs supplied by the Pharmacists, the focus of the Associate Insurance Commissioner was properly upon the "proposal as it relates to those who are to be insured under the plan." *Johns Hopkins Hosp. v. Insurance Comm'r,* 302 Md. 411, 420, 488 A.2d 942, 947 (1985). Thus, his concern was, and should have been, upon whether that price which BCBSM would pay the Pharmacists unfairly affected the subscribers to BCBSM's plan. That policy determination was quasi-legislative in nature in so far as the Pharmacists were concerned. We and the Court of Special Appeals have consistently treated hearings under § 242B regarding rates and forms as a legislative function. *See Johns Hopkins,* 302 Md. at 418, 488 A.2d at 945; *Insurance Comm'r v. Blue Shield,* 295 Md. 496, 513, 456 A.2d 914, 924 (1983); *Maryland Fire Underwriters Rating Bureau v. Insurance Comm'r,* 260 Md. 258, 263–64, 272 A.2d 24, 27 (1971); *Insurance Comm'r v. National Bureau of Casualty Underwriters,* 248 Md. 292, 303, 236 A.2d 282, 288 (1967); *Lubman v. Insurance Comm'r,* 86 Md.App. 65, 67, 585 A.2d 269, 270 (1991); *Katz v. Insurance Comm'r,* 53 Md.App. 420, 426–27, 454 A.2d 387, 390–91 (1983) (quoting *National Bureau, supra* ); *Blue Shield of Md., Inc. v. Ward Mach. Co.,* 49 Md.App. 258, 270–71, 431 A.2d 727, 733–34 (1981).

Appellants argue that they are entitled to a full adjudicatory hearing under several additional theories outside of §§ 356 and 242B: (1) by statute, under the Administrative Procedures Act, Md.Code (1984, 1993 Repl.Vol., 1994 Cum.Supp.), §§ 10–101 to 10–305 of the State Government Article; (2) by statute, under Md.Code (1994), Art. 48A, § 35; and (3) under a due process claim. We reject all three of these contentions.

■■ "[T]he APA itself does not grant a right to a hearing." *Sugarloaf,* 323 Md. at 652, 594 A.2d at 1120. Only a decision in a *contested case* can be challenged through judicial review under the APA. Md.Code (1984, 1993 Repl.Vol., 1994

Cum.Supp.), § 10–222 of the State Government Article. "[T]he mere fact that a statute calls for a hearing is not in and of itself sufficient to make the subject of that hearing a 'contested case.'" *Washington Suburban Sanitary Comm'n v. Donacam Assocs.*, 57 Md.App. 719, 726, 471 A.2d 1097, 1101 (1984), *rev'd on other grounds*, 302 Md. 501, 489 A.2d 26 (1985).

A contested case is defined as

"a proceeding before an agency to determine:

(i) a right, duty, statutory entitlement, or privilege of a person that is required by statute or constitution to be determined only after an opportunity for an agency hearing; or

(ii) the grant, denial, renewal, revocation, suspension, or amendment of a license that is required by statute or constitution to be determined only after an opportunity for an agency hearing."

Md.Code (1984, 1993 Repl.Vol., 1994 Cum.Supp.), § 10–202(d)(1) of the State Government Article. The proceedings before the Commissioner in this case were to obtain information as to whether the proposed contract form was "unjust, unfair, inequitable, inadequate, misleading, deceptive, or encourage[d] misrepresentations ..." Art. 48A, § 356(a). The proceedings did *not* involve a right, duty, statutory entitlement, privilege or license; therefore, the proceedings were not a contested case under the definition found in Md.Code (1984, 1993 Repl.Vol., 1994 Cum.Supp.), § 10–202(d)(1) of the State Government Article. Hence, the decision was not subject to judicial review under the APA because the proceedings fail to meet the contested case requirement in Md.Code (1984, 1993 Repl.Vol., 1994 Cum.Supp.), § 10–222 of the State Government Article.[9]

---

**9.** Appellants have effectively admitted that the APA does not apply to this case: *"[t]he exemption of the APA from the Insurance Commissioner proceedings* was eliminated in the 1993 legislative amendments." Appellants' Reply Brief at 16 (emphasis added). See our discussion, *infra,*

 In a related approach, Appellants argue that they are entitled to an adjudicatory hearing under the APA by way of Md.Code (1957, 1994 Repl.Vol., 1994 Cum.Supp.), Art. 48A, § 35. This provision states that "a hearing held under this section shall be conducted in accordance with [the APA]." Art. 48A, § 35(a)(4)(i). We need not address this particular contention on the merits. While paragraph (a)(2) of this section may require the Commissioner to hold a hearing, the language requiring a hearing under the APA was added to § 35 by Ch. 59, § 1 of the Acts of 1993, and was not effective until June 1, 1993. The proceedings before the Commissioner in this case, which occurred prior to the effective date of that amendment,[10] are, therefore, not governed by it.

 Finally, Appellants argue that denial of an adjudicatory hearing in this case denied them their right to due process. We have recognized that "a 'judicial' or 'trial-type' hearing is not a requirement of procedural due process where an administrative agency does not act in a quasi-judicial capacity and the facts to be determined are 'legislative' rather than adjudicative in nature." *Montgomery County v. Woodward & Lothrop, Inc.*, 280 Md. 686, 711, 376 A.2d 483, 497 (1977); *see Sugarloaf*, 323 Md. at 670, 594 A.2d at 1129. "[I]t is the nature of the dispute, rather than the stage of the proceedings, that determines whether or not a matter is a contested case." *Modular Closet Sys., Inc. v. Comptroller of the Treasury*, 315 Md. 438, 444, 554 A.2d 1221, 1224 (1989); *see also Woodward & Lothrop*, 280 Md. at 712, 376 A.2d at 497 ("it is the nature of the decision's fact-finding process, not the ultimate effect of the decision, that determines the party's right

---

of the inapplicability, to this case, of the 1993 amendment to Maryland Code (1994), Art. 48A, § 35.

**10.** Appellants in their brief assert that "[t]he 1993 recodification and amendments became effective while this proceeding was before the Insurance Commissioner. Thus the new statute which affects a matter in litigation when the statute becomes effective will be applied by a reviewing court." Appellants' Brief at 21 (citations omitted). Appellants are incorrect because the hearing was completed prior to the effective date of the amendment.

to an adjudicatory hearing"). As discussed above, Maryland's appellate courts have consistently treated the Commissioner's authority to approve rates and forms as a quasi-legislative function. Under *Woodward & Lothrop,* therefore, the failure of the commissioner to grant Appellants' request for an adjudicatory hearing in this case, was not a violation of Appellants' right to due process. The Associate Commissioner did not err in refusing to hold an adjudicatory or quasi-judicial hearing on the Pharmacists' complaints.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**